IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CLAIRE STANLEY, DEREK MANNERS, and CHRISTOPHER STEWART, on behalf of themselves and all others similarly situated, | § § § § § | |
| Plaintiffs, | § | Civil Action No. 3:16-cv-01113-O |
| v. | § § | |
| BARBRI, INC. aka BARBRI BAR REVIEW, | § § | |
| Defendant. | § | JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT

Plaintiffs Claire Stanley, Derek Manners, and Christopher Stewart respectfully file this First Amended Complaint on behalf of themselves and other similarly situated blind law students against Defendant BarBri, Inc., which enrolled them in bar review courses to study for the bar examination, but refused to remove several accessibility barriers to the services Barbri, Inc. provides to its students, including accessibility barriers to its mobile application, website, and course materials, thereby leaving them with inferior preparation services, preventing them from effectively preparing for their bar exams and denying them the full and equal enjoyment of Barbri, Inc.  In support of their Complaint, Plaintiffs state as follows:

## STATEMENT OF CLAIMS

1.      Defendant BarBri, Inc., aka BarBri Bar Review ("BarBri"), by far the largest bar preparation course in the country, violates the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.* ("ADA"), and Chapter 121 of the Texas Human Resources Code., Tex. Hum. Res. Code § 121.001, *et seq.* ("Chapter 121") by maintaining barriers to the accessibility of its services for blind students who use talking screen reading software and failing to make reasonable accommodations

or provide auxiliary aids or services, and thus unnecessarily hindering blind students from entering the legal field by preventing them from fully, equally, and adequately preparing for the bar exam.

2.     In this putative class action lawsuit, Plaintiffs seek an order requiring BarBri to provide bar examination preparation services that are accessible to blind students, so that they can enjoy full and equal access to BarBri's bar review services, which include the website and mobile application that BarBri uses to prepare students for the bar exam.  This action also seeks compensation for blind students who signed up for and relied on BarBri's review services to study for their bar exams, but found these services to be inaccessible to them and other blind students.

3.     All three named Plaintiffs are blind individuals who used and/or are currently using BarBri's bar review course to study for a bar exam, but encountered or are currently encountering significant accessibility barriers to BarBri's website, http://www.barbri.com, and mobile application (BarBri App (v1.5.1)).  In this action, Plaintiffs seek to redress the injuries they have suffered or will suffer if BarBri is allowed to continue to discriminate against blind students in violation of federal and state law.

## JURISDICTION

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4), because Plaintiffs assert a federal civil rights claim under the federal ADA, 42 U.S.C. § 12182.  This Court has supplemental jurisdiction over Plaintiffs' Texas state law claims pursuant to 28 U.S.C. § 1367.

5.     This Court has personal jurisdiction over Defendant, including general jurisdiction, as Defendants' corporate headquarters are located in this District.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), as both Defendants reside in this district, where their corporate headquarters are located.  Venue is also

proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the federal and state claims occurred in this district.  In addition, the terms and conditions on BarBri's website state that students who wish to assert legal claims against BarBri should bring those claims in this federal district.

## PARTIES

7.     Plaintiff Claire Stanley is a resident of Silver Spring, Maryland and took the Pennsylvania bar exam in July 2015.  As she did not pass, she plans to take the bar exam again in July 2016.  She is currently enrolled in the BarBri course.  Claire is blind and uses the Job Access With Speech ("JAWS") screen reader on her computer to access and review materials on the Internet. She also uses an iPhone with VoiceOver (a talking screen reader for all Apple Products) to access all of the menus and applications on her phone.

8.     Claire became interested in advocacy for herself and others beginning in high school, when she became involved with the National Youth Leadership Network, a youth-led and youth-driven national non-profit organization to promote youth leadership and education.  It is a national voice for young leaders with disabilities.  Claire was even selected to travel to attend a NYLN conference.

9.     From then on, Claire knew that she wanted to be a lawyer, and majored in political science in college.  She applied to attend law school during college and was delighted to begin law school after her graduation.

10.     Claire realized that she wanted to practice disability rights law or general civil rights law, and never strayed from this goal during law school.  She held internships at various civil rights and disability rights organizations and federal agencies, including at the Department of Justice, Disability Rights Section.

11.     Claire is now a fellow at the federally mandated protection and advocacy agency for the rights of people with disabilities in Washington DC, University Legal Services.  Once she is able to pass the bar, she will finally be able to fully represent her clients and achieve her goal of being a civil rights attorney.

12.     Plaintiff Derek Manners recently graduated from Harvard Law School in May of 2016 and plans to take the bar exam in July 2016.  He is currently enrolled in the BarBri course. Manners is blind and uses JAWS on his computer to access and review materials on the Internet. He also uses an iPhone with VoiceOver to access all of the menus and applications on his phone.

13.     Derek was curious about being an attorney from a young age.  His interest in the connection between policy and the law inspired him to join the debate team in high school.

14.     In college at the University of Texas, he majored in political science and economics, and knew he wanted to practice political law.

15.     During law school, Derek interned at the Office of the Connecticut Attorney General, where he investigated a Wall Street bank that was heavily involved in the mortgage security crisis.

16.     Derek also served as the Legislative Director for the National Federation of the Blind (a civil rights advocacy group led by and consisting of blind individuals from around the country) of Massachusetts, where he monitored legislation at the state level that affected persons with disabilities, was the point person for coordinating meetings with members of Congress in Massachusetts, and mobilized NFB of Massachusetts membership for social media campaigns.

17.     Derek is working part-time at the National Federation of the Blind in its Governmental Affairs Office, and will be starting a job at the firm of Allen & Overy (practicing

political law) in the fall.  He will need to pass the bar in order to achieve his goal of practicing political law.

18.     Plaintiff Christopher Stewart recently graduated from the University of Kentucky College of Law and plans to take the bar exam in July 2016.  He is currently enrolled in the BarBri course.  Stuart is blind and uses JAWS on his computer to access and review materials on the Internet.  He also uses an iPhone with VoiceOver to access all of the menus and applications on his phone.

19.     Christopher always had an interest in government and political science, as well as the law.  His passion for social justice dates back to elementary school, when he first read To Kill a Mockingbird. It remains one of his favorite novels.

20.     As an undergraduate, he majored in violin performance and worked as a professional violinist for a few years.  But his passion for law drove him to attend law school.

21.     During law school, Christopher worked for the Kentucky attorney general, where he was involved in researching how new EPA regulations under the Clean Air Act impact the state. This issue is now being litigated by attorneys general from over a dozen states.

22.     Christopher also worked for one of Kentucky's leading trial lawyers, where he prepared pleadings, motions, and briefs for cases involving issues as diverse as medical malpractice, qui tam/False Claims Act actions, and aircraft mechanical negligence.

23.     In addition, he served as president of his law school's Election Law Society and was an editor of his school's flagship law review for two years. Christopher also served as Legislative Director for the National Federation of the Blind of Kentucky.  His duties included meeting with representatives of Kentucky's entire congressional delegation, advocating for

specific issues important to blind individuals in Kentucky and nationally, participating in face-to-face meetings, making phone calls, and coordinating letter writing campaigns.

24.     Christopher will serve as a federal law clerk in the fall. Following his term, he hopes to practice employment law, and would like to work on the defense side, helping companies create an ADA accessibility plan and favorably resolve claims of discrimination.

25.     Christopher recently got married and hopes to pass the bar before beginning his clerkship.

26.     Defendant Barbri, Inc., aka BarBri Bar Review, is a company that sells and provides to students a bar exam preparation course, which includes online and in-person lectures and course material.

## FACTUAL ALLEGATIONS

27.     For sighted and blind people, the Internet is a significant source of information and education, and offers a wealth of information, services, and products with instant availability and without the need to travel.  For students, the Internet has become a critical and necessary tool for learning, studying, and preparing for examinations, especially for students who study for the bar exam in jurisdictions across America.  In many places of higher education in America, the Internet is the exclusive or primary means by which students learn and interact with their teachers and classmates.

28.     Like other educational institutions and exam preparation courses that have increased their reliance on the Internet to teach, inform, and evaluate students, BarBri has significantly increased its use of Internet-based resources to enhance and facilitate its traditional bar exam preparation courses.  For example, BarBri offers an online live chat feature to connect students with tutors, an online planner, online practice questions and study outlines, online lecture

notes, and online lecture videos.  Upon information and belief, by harnessing the power of the Internet to teach its bar examination courses, BarBri has reduced its costs per student and increased its ability to earn revenue and profit from its bar review courses.

29.   Blind individuals access the Internet from computers by using screen access software, which vocalizes visual information on a computer screen or displays the content on a refreshable Braille display.  This software represents the only method by which blind Americans can independently access the Internet and related computer programs.  Without screen reading software and proper coding of a web site and mobile application to function with this software, blind persons cannot fully access the information, services, and products that companies like BarBri provide through the Internet.

30.   Several screen access software programs are available to blind users of Windows and Apple operating system-enabled computers and devices. The most popular screen access software for a Windows computer is Job Access With Speech ("JAWS"), which must be purchased and installed separately.  For Apple users, the only screen access software is VoiceOver, which is built into all Apple products.  While each software program may have differences in how the user operates the software, each program requires information on the Internet to be capable of being rendered into text so that blind computer users may access it.

31.   Like most law students, all three plaintiffs knew they would have to take a bar prep course to pass the bar. So, before graduating from law school, they all entered into agreements to take BarBri's bar exam course and relied on BarBri's resources to prepare them to take and pass the bar examination.

32.   All three plaintiffs requested reasonable accommodations from BarBri well before the course began, and BarBri assured them that its bar review courses would be fully accessible to

them and would provide them with  preparation equivalent to sighted students to take their bar exam.

33.    Defendant's website and mobile application provide practice questions to help students prepare for the Multistate Bar Exam ("MBE"), which is a one-day multiple choice test that all students must take to pass the bar exam in any state (with the exception of Louisiana).

34.    BarBri's website and mobile application provide real-time feedback to students on essay topics and MBEs, and offer many other features to help students study for and prepare for taking the bar examination in July or February of each year.  BarBri's website and mobile application are used extensively and regularly nationwide, including in the state of Texas.  BarBri uses its web site and app to grade and rank students against themselves, monitor their own progress, and to receive assignments tailored to their own level of progression.

35.    According to its website, www.thebarbrigroup.com/the-new-barbri/bar-review, BarBri is the "only course available to students in all fifty states...  With significant cost of law school education and so much at stake, it makes sense for law students to choose a proven partner and support system they can count on to teach what they need to know to pass the bar exam, the first time.  BarBri has become synonymous with bar prep success," and has become the "#1 most trusted" bar review course in the United States.

36.    Also on its website, www.barbri.com/bar-review-course, BarBri specifically advertises its web site and mobile application as part of its innovative course which offers the best possible learning experience "in class, online and mobile."  BarBri highlights its online personal study plan, noting that "The easy-to-use online Personal Study Plan is your daily to-do list during the BARBRI Bar Review course. It continually monitors your progress and automatically recommends assignments aligned to your unique areas of need . . . . Your Personal Study Plan

analyzes more than 1,000 points of data collected from your assignments, grades, practice exams and practice essays. This helps you hone in and improve on areas of law that need the most attention."

37.     BarBri highlights other online components as part of its innovative learning course, such as the online Essay Architect: "The online Essay Architect tool provides immediate feedback for higher scoring essays. It enhances your ability to write the lawyer-like answers that the bar examiners are looking for on the bar exam . . . . Using drag-and-drop features, you build your practice essay following the standard IRAC format. Immediate feedback reinforces organization and structure."

38.     BarBri's Simulated MBE with Pass Predictor component is advertised on BarBri's web site as by far, the "best predictor of bar exam success." "Our realistic 200-question Simulated MBE compares your test results with other BARBRI students - the largest, most statistically valid group of bar exam takers nationwide. "BarBri prepares students to take the bar examination in all 50 states and the District of Columbia.  Every jurisdiction except for Louisiana administers and relies upon the results of the MBE, which is a 200-question multiple-choice examination that the National Conference of Bar Examiners developed.  In addition to requiring students to take the MBE, jurisdictions require students to answer a variety of essay questions in narrative form and state-specific multiple choice questions to evaluate their legal analysis and writing skills.  BarBri's courses and materials prepare students to master all portions of the relevant state bar exam, score as high as possible on the exam, and pass the exam.  In the jurisdictions where students take the MBE, BarBri uses "MPQ Question Sets" for students to review and answer questions that are the same or similar to the questions that will be asked in the MBE during the bar exam.

39.     It is very important for students to score as high as possible on the MBE, because in most jurisdictions the MBE provides students with the largest – or one of the largest – opportunities to earn points that are needed to meet the minimum point threshold for passing the bar exam in the relevant jurisdiction.  In addition, some jurisdictions will only allow lawyers who have already been admitted to another jurisdiction to waive into their state bars if they previously obtained a specific MBE score during a prior bar exam.  Thus, even if a student has passed the bar exam in a jurisdiction, such as Texas, he or she may not automatically be able to become a member of another jurisdiction, such as the District of Columbia, if his or her MBE score on the prior bar exam did not meet a certain threshold.  Instead, he or she would have to take a new bar exam, and would likely incur further expenses and time to prepare to take the bar exam again.

40.     One key component of BarBri is "BARBRI AMP."  BarBri states that "BARBRI AMP is a highly effective way to master the black letter law and maximize your MBE score. It's built right into your Personal Study Plan — only when you need it based on assessments of your bar study progress.  BARBRI AMP employs interactive software techniques used by video game developers to keep you engaged, motivated and focused. It quickly assesses your level of knowledge and confidence in core areas of law, then focuses your attention where you need additional study. BARBRI AMP monitors your aptitude in real time and instantly configures follow-up questions until you've demonstrated a solid grasp of a concept. No other legal study aid does this."

41.     Blind students of BarBri cannot use this online component due to its inaccessibility, and thus cannot take advantage of BarBri's real-time grading, ranking, and individualized progression of study.

42.     On   BarBri's main page, www.barbri.com, there is a link to a web page entitled "ADA ACCOMMODATION," which states that "BarBri complies with the Americans With Disabilities Act (ADA) and provides appropriate auxiliary aids and services to students with disabilities to ensure effective communication."   BarBri was displaying the same statement on its website during the time that each of the Plaintiffs enrolled in BarBri's bar review course and at the time that Claire was preparing to take the bar exam last year.   BarBri's enrollment form is used nationwide and also states that, "BarBri complies with the Americans with Disabilities Act of 1990 and provides appropriate auxiliary aids and services to students with disabilities."

43.     However, upon information and belief, the auxiliary aids and services that BarBri provides are not appropriate, as they do not ensure equivalent effective communication with its blind students and sighted students.

44.     On the same page that BarBri promises that it complies with the ADA, BarBri states that "practice testing" is one of the "three main components of the BARBRI course," in addition to "lectures" and "substantive law outlines."   BarBri's website further states that "The BARBRI course is different from law school courses.   It is extremely condensed and requires you to blend the three components above to bring you to peak performance for your bar exam."   BarBri's practice testing primarily occurs on the BARBRI website, www.barbri.com.   Accordingly, BarBri is and has been fully aware that students with disabilities, including blind students, need to be able to fully access BarBri's website to engage in the practice testing that is a critical and necessary part of preparing for the bar exam.

45.     When Claire was studying for the bar exam in the summer of 2015, BarBri's website identified an ADA Manager to whom students with disabilities should direct inquiries about BarBri's compliance with the ADA and/or requests for reasonable accommodations: ADA

Director, BARBRI Bar Review, 200 W. Adams, Suite 250, Chicago, IL 60606, Fax: (312) 288-4607, ADARequests@BARBRI.com.

46.     Prior to commencing her bar review course in 2015, Claire contacted BarBri's former National ADA Director, Kate Levine, and requested that her textbooks, lecture notes, and handouts be provided to her in an electronic format so that she could access them. Defendant's employee, Ms. Levine, assured Claire that it would provide these materials in an accessible format.

47.     Prior to commencing the 2016 bar review course, Derek and Christopher also contacted Defendant's current national ADA manager to request materials for the July 2016 bar review course in an alternate format, and Defendant assured them that they would be made accessible.

48.     While Claire studied for the July 2015 bar exam, BarBri's website contained accessibility barriers preventing Claire from accessing it, including the "MPQ Question Sets" in the StudySmart section that allows students to engage in practice testing for the MBE.  While Defendant's website allowed Claire to read the text of the questions, it prevented her from reading the answer choices, as they appeared in an inaccessible flash window.

49.     Claire attended the live lectures throughout her bar review course last summer in Philadelphia, Pennsylvania.  The lecturers often referred her to online components of the BarBri course, such as submitting practice test answers online, following the BarBri's online planner for daily assignments, and receiving personalized assignments online based on their individualized test results.  One lecturer who referenced this specifically was Dale Larrimore, one of the BarBri Regional Directors.  However, the online planner, practice tests with real-time scoring, and other components referenced by the lectures were and are not now fully accessible to blind students.

50.     Claire also recalls that students were allowed to attend the BarBri in-person lectures anywhere in the country and at any time, so long as they showed their BarBri ID badge.

51.     Chris also attended in-person BarBri lectures at his law school, and recalls that the handouts which the students are required to fill in during the lectures were provided on the BarBri mobile application. Chris and the other two Plaintiffs are not fully able to access the application with their iPhones.

52.     Derek listens to the lectures online, but is aware that for many who attend the lectures in person, BarBri simply plays a video of the live lecture in the classroom, and makes the same references described above to the online components of the BarBri course.

53.     Defendant has also failed to make the answer choices of the MPQ question sets accessible.  BarBri instructs students to first read the "call of the question" before reading the question itself.  Yet, the accessibility barriers prevent them from doing so by keeping them from first reading the answer choices before scrolling back up and reading the question itself.  Because Defendant is, in effect, forcing the plaintiffs to read the question and answer choices in chronological order without pause, they are not able to take the practice in the manner BarBri advises its customers.

54.     BarBri further proclaims that the "Essay Architect" feature of its website will help students write better essays for bar exams.  Students using Essay Architect must rearrange phrases in a pre-written essay to organize them in the proper format, and this is done by dragging and dropping the phrases.  They receive feedback in the margins about their formatting.  Defendant does not provide this feature to Plaintiffs, as it does not make the drag-and-drop function accessible to their screen readers.  BarBri has also failed to allow Plaintiffs to detect that certain phrases relating to the area of law covered by the essay are highlighted with their screen readers, thereby

preventing them from receiving the vital feedback on essay construction that they need and that all of their sighted peers were and are now receiving.

55.     Defendant has also failed to make the same features on its website accessible to Plaintiffs when they used BarBri's iOS mobile application, thereby preventing them from studying anywhere and at any time.  Thus, Defendant has effectively denied the use of this significant feature of the bar review course which it advertises.

56.     Defendant has also failed to remove accessibility barriers to BarBri's electronic versions of the books and lecture handouts.  The PDF versions of books and handouts do not contain page numbers detectable by JAWS, and the Microsoft Word versions of the same documents did not provide indicia of the page numbers corresponding to the PDF and hard copy versions. BarBri unnecessarily makes it difficult for Plaintiffs to locate certain sections of the textbooks specified in lectures or in the planner.

57.     Furthermore, in the summer of 2015, Defendant printed the Braille version of its Conviser "mini review" with inaccurate use of Braille italics indicators. This "mini review" is an important book that provides an outline of the materials that students are required to use in preparing for the bar exam.  BarBri placed Dots 4-6 Braille italics symbols in front of each word in an italicized portion, instead of proper brailling, which would have these symbols at the beginning and end of an entire portion of the text, not in front of each word.  In doing so, Defendant made it extremely and unnecessarily difficult for Claire to read the mini review in 2015.

58.     Claire complained to BarBri's National ADA Director in 2015 about these accessibility barriers and requested that they be removed, but BarBri did not take any action to modify or fix the inaccessible features on its website or app, and did not take any action to address the accessibility issues with BarBri's books and lectures, even though removing these barriers is a

reasonable request that would accommodate the many people with visual disabilities who pay BarBri to help them prepare for bar exams, would not be an undue burden for Defendant, or alter the nature of its services.  BarBri has ample resources to provide these relatively simple auxiliary aids and services.  In the end, BarBri's unequal and inferior test preparation services caused Claire to score below her sighted peers and be unable to pass the 2015 bar exam.

59.     On July 29, 2015, the Washington Lawyers' Committee for Civil Rights and Urban Affairs emailed and sent a letter on Claire's behalf to BarBri informing the company about these accessibility issues and asking BarBri to respond by August 10, 2015.  However, BarBri ignored the letter and has still refused to respond.

60.     Plaintiffs and many other blind law students are taking Defendant's bar review course for the July 2016 bar exam, and they are encountering and will encounter the same accessibility barriers that BarBri has refused to address or remove.

61.     Plaintiffs have had the following additional issues thus far while taking the 2016 course:

- The radio buttons for the answer choices on the "MPQ Question Sets" in the StudySmart component are not accessible.

- Plaintiffs are not able to speed up, slow down, or jump around lectures on BarBri's web site or mobile application, as users not using screen readers are able to do.

- For general lectures, Plaintiffs are not able to exit from the online player and then re-open the player and begin the lecture where they left off.  Sighted students can easily pause, rewind, fast-forward, and exit lectures without losing their place.

- Plaintiff, Christopher Stewart, has had many lectures for which Defendant did not provide corresponding accessible handouts on time. There were days when Christopher had to listen to lectures for which he did not receive the handouts, and this put him days behind where he should have been in his study. Claire faced a similar situation last time she used Defendant's services. BarBri still has not provided Christopher with a handout for his Transactions course lecture.

- BarBri also failed to provide Christopher with timely accessible outlines for his state-specific distinction lessons on time. He needed these outlines as he progressed from one lesson to the next. However, BarBri provided them late, and all at once, making him fall further behind in his studying for the bar.

- BarBri also provides students a percentile rank after every practice test. BarBri tells students to monitor progress while studying for the bar exam by using the percentile rank graphs featured on BarBri's website. However, the percentile rank feature is not accessible to Plaintiffs. Furthermore, BarBri does not allow Plaintiffs to self-grade essays online, which is a feature it offers sighted individuals.

- BarBri's website contains combo boxes (which are the dropdown menus) for its online planner and other components that are not fully accessible.

- Plaintiffs are not able to access the pop-up notifications on BarBri's website, despite BarBri's warnings that the notifications are important for students to read.

- Plaintiffs cannot access dates beyond the current week on BarBri's online assignment calendar.

- Plaintiffs are not able to self-grade their essays, because they cannot submit them online, as the Essay Architect component remains inaccessible.

- Rather than being able to receive, submit, and do assignments online, Plaintiffs must access BarBri's materials through a One Drive folder, or on a flash drive sent via mail.  Yet, even BarBri's One Drive folder is inaccessible unless Plaintiffs use the Mozilla Firefox web browser.  One would not know to utilize Firefox to access the One Drive folder unless discovering this by trial and error.  BarBri's One Drive folder should be accessible with all web browsers that operate with screen readers.

62.    Plaintiffs have fallen behind their class-mates due to these accessibility barriers and do not even know how they are performing relative to their sighted peers.  They fear that they will not be able to pass the bar exam this year.

63.    Defendant's accessibility barriers still persist today, which Plaintiffs are experiencing while preparing for the July 2016 exam.

64.    Due to BarBri's failure to remove these accessibility barriers, Claire has been forced to hire a tutor through BarBri, and was charged extra for the tutor.

## CLASS ALLEGATIONS

65.    Plaintiffs seek certification of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and/or 23(b)(3): "All legally blind individuals nationwide who, on or after April 25, 2014, took, plan to take or attempted to take a BarBri bar review course at a time when BarBri's website, mobile application, or other course materials was or is not fully accessible to legally blind students, or who have been discouraged from taking the BarBri bar review course due to such inaccessibility."

<u>Impracticability of Joinder</u>

66.     The persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.  Upon information and belief, dozens to hundreds of legally blind individuals are part of the proposed class, and the members of the class are geographically dispersed throughout the United States.

<u>Commonality</u>

67.     This case arises out of Defendants' common policy and/or practice of denying blind persons full and equal access to the goods and services of BarBri's bar review course, since parts of its website, mobile application, and course materials are inaccessible to blind persons.

68.     The central question in this case concerns whether BarBri's bar review course violated the ADA and Chapter 121 by failing to provide proper auxiliary aids and services, make reasonable accommodations, and maintaining a policy and practice of failing to make its course materials accessible to blind students.  Because the same type of course materials are used in all jurisdictions, the answer to these legal questions will produce common answers for all class members.

69.     Plaintiffs' claims raise subsidiary common questions that will also have common answers for each class member, including whether BarBri maintains a place of public accommodation under the ADA or a public facility under Chapter 121, whether it constitutes a private entity which offers a course related to licensing for professional purposes and whether BarBri's course materials were inaccessible to blind students.

Typicality

70.     The claims of the named plaintiffs are typical of those of the proposed Class. Plaintiffs challenge a single policy by which BarBri provided inaccessible course materials to students throughout the United States.  Plaintiffs experienced the type of inaccessibility under BarBri's uniform course materials that other legally blind students experienced.

71.     The relief sought in this action primarily consists of a declaration that BarBri violated the rights of Plaintiffs Stanley, Manners, and Stewart, and all of the other members of the class under the ADA and the Texas Human Resources Code, an order requiring BarBri to make its course materials accessible to legally blind students, and an order requiring BarBri to uniformly compensate students who have been subjected to BarBri's inaccessible course materials.

Adequacy

72.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs are aware of no conflict with any other member of the Class. Plaintiffs understand their obligations as class representatives, and have already undertaken steps to fulfil them, and are prepared to continue to fulfill their duties as class representatives.

73.     Plaintiffs have retained and are represented by counsel competent and experienced in complex class action litigation, including class actions brought under the Americans with Disabilities Act and Texas state law requiring full and equal access for people with disabilities.

Rule 23(b)(2)

74.     This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.

75.     Barbri has violated the ADA and the Texas Human Resources Code in the same manner as to all members of the Class by failing to provide legally blind students with a fully accessible web site, mobile application, and course materials.  As such, BarBri has acted or refused to act on ground generally applicable to the Class.

76.     Plaintiffs seek monetary relief that is incidental to the declaratory relief that Plaintiffs seek in this action.  Specifically, Plaintiffs seek a refund of their Bar Bri registration fees, which can easily be determined, and $300 of monetary relief for each class member, the presumptive figure of monetary relief that is provided for under the Texas Human Resources Code. Because Plaintiffs seek identical amounts of monetary damages for all class members, the monetary relief in this action may be calculated in a simple, objective, and mechanical manner.

<u>Rule 23(b)(3)</u>

77.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

78.     By resolving the common legal and factual questions identified above in a single class proceeding, each member of the class will receive a determination of whether BarBri violated his or her rights under the ADA and the Texas Human Resources Code.  These questions predominate over the few, if any, issues that may affect individual class members.

79.     Upon information and belief, there are no other pending lawsuits in which similar members of the Class have raised similar allegations against BarBri.

80.     It is desirable to concentrate the litigation of the claims in this particular forum, as BarBri's corporate headquarters are in this District, and as BarBri's website states that all claims against BarBri should be brought in this District.

81.     There are no difficulties in managing this case as a class action.

82.     References to Plaintiffs shall be deemed to include the named Plaintiffs and each member of the class, unless otherwise indicated.

## CLAIMS FOR RELIEF

### Violations of the ADA

83.     Plaintiffs incorporate by reference the foregoing allegations as though fully set forth herein.

84.     On July 12, 1990, Congress enacted the Americans with Disabilities Act "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) .

85.     Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

86.     Plaintiffs are all legally blind and therefore qualified individuals with disabilities within the meaning of 42 U.S.C. § 12102, *et seq.*

87.     Defendant Barbri leases and/or owns lecture halls and offices around the country in which it offers its in-person lectures, either live or by video, and owns and operates its web site and mobile application.   It further entered into contracts to provide services to Plaintiffs as customers.

88.     BarBri is a "place of education" which is specifically included as a place of public accommodation in the twelve categories of Title III of the ADA. 28 C.F.R. 36.104(10) and operates "lecture halls", which are also included as places of public accommodation in the twelve categories of Title III of the ADA. 28 C.F.R. 36.104(4).  Thus, BarBri is a "private entity which owns, leases, (or leases to), or operates a place of public accommodation," and therefore has an obligation to comply with Title III of the ADA.  42 U.S.C. § 12182(a).

89.     In order to receive the full benefit of the BarBri lectures, both in-person or online, students are required to, and are instructed to, use components of Barbri's online course material, including using course outlines, taking and submitting on-line practice tests, taking on-line MPQ question sets, submitting essays, following the online calendar for assignments, and receiving personalized assignments based on an individual's online practice test scores.   Access to Barbri's on-line course material is integral to full and equal enjoyment of its lecture halls and place of education.

90.     The benefits provided by BarBri's website and mobile app, including the MPQ question sets, Essay Architect, and Conviser Mini Review, are goods, services, facilities, privileges, advantages, and/or accommodations of BarBri.

91.     By refusing to provide an inaccessible website, mobile app, and course materials, BarBri denies blind students full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations, including its in-peson and online lectures, that BarBri makes available to its sighted customers.  Accordingly, BarBri is systematically violating the ADA by denying blind customers the benefits of access to or the full and equal enjoyment of its website, mobile app, course materials, lectures, and other bar review services.  This refusal also denies

Plaintiffs the opportunity to participate in programs or activities that are not separate or different from those without disabilities. 42 U.S.C. § 12182(D).

92.    BarBri's violations are ongoing and continue to deny accessibility to blind students who use or wish to use BarBri's full bar review services to study for a bar exam.

93.    Under Title III of the ADA, Defendant is also committing discrimination by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities; and failing to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A)(ii) and (iii).

94.    By refusing to modify its website, mobile app, and course materials, even when Plaintiffs have made reasonable requests and have lodged complaints, and when such modifications would not be an undue burden for BarBri  and would not alter the nature of BarBri's services, BarBri has denied Plaintiffs, and continues to deny Plaintiffs, on the basis of their disability, the same access to BarBri's goods, services, facilities, privileges, advantages, and/or accommodations as the access provided to individuals without disabilities.

95.    A public accommodation is also required to furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. 28 C.F.R. 36.303(c).

96.    The term auxiliary aids and services includes screen reader software and accessible electronic and information technology, or other effective methods of making visually delivered materials available to individuals who are blind or have low vision. 28 C.F.R. 36.303(b)(2).

97.     The auxiliary aid and service in this instance is screen reader software, and the coding and tagging on Barbri's website and mobile application that is necessary for screen reader software, such as talking screen readers, to read and access the content. Such access is necessary to grant effective communication with BarBri's blind students throughout the bar review course.

98.     By failing to provide materials in a timely manner, providing materials in inaccessible formats, and preventing blind students from accessing all the online components of the bar review course with their screen readers by refusing to eliminate accessibility barriers, BarBri is denying Plaintiffs and other blind students effective communication.

99.     BarBri is also a private entity which offers a course related to licensing for professional purposes. 28 C.F.R. 36.102(a)(3).  Thus, it is covered by Title III of the ADA

100.     Any course covered by this section must be modified to ensure that the place and manner in which the course is given are accessible. ADA Technical Assistance Manual, III.4.6200, available at www.ada.gov/taman3.html

101.     This includes providing auxiliary aids or services, except where to do so would fundamentally alter the course or result in an undue burden.

102.     BarBri has not shown that eliminating accessibility barriers to its web site or mobile application would constitute a fundamental alteration to its course or be an undue burden.  BarBri is therefore required to ensure that its course is fully accessible.

<u>Violations of Chapter 121</u>

103.     Plaintiffs incorporate by reference the foregoing allegations as though fully set forth herein.

104.     The policy of Texas "is to encourage and enable persons with disabilities to participate in the social and economic life of the state, to achieve maximum personal independence,

to become gainfully employed, and to otherwise fully enjoy all public facilities within the state." Tex. Hum. Res. Code § 121.001.

105.     BarBri's bar review services, including its website, mobile application, and course materials are an integral part of the bar review services. BarBri is a public accommodation under the ADA and a commercial establishment operating in Texas, and thus a public facility for purposes of Chapter 121.

106.     Tex. Hum. Res. Code § 121.002. Chapter 121 requires that public facilities must make "reasonable accommodations in policies, practices, procedures." Tex. Hum. Res. Code 121.003(d)(2). Defendant has failed to make reasonable accommodations in its policies, practices, and procedures for Plaintiffs and other students who have visual disabilities to properly use their bar exam preparation materials in the same way it allows sighted students to do so.

107.     Chapter 121 also requires BarBri to "provide auxiliary aids and services necessary to allow the full use and enjoyment" of its services. Tex. Hum. Res. Code Ann. 121.003(d)(3). Defendant has refused to provide a website, app, or course materials and components that are fully accessible to Plaintiffs' screen readers, or other auxiliary aids necessary to allow them effective communication, equivalent services, or the full use and enjoyment of Defendant's bar exam preparation services.

108.     "Persons with disabilities have the same right as the able-bodied to the full use and enjoyment of any public facility in the state." Tex. Hum. Res. Code § 121.003(a). By failing to ensure that its bar review services, including its website, mobile application, and course materials and components, are accessible to people with disabilities, including blind persons, and by failing to address the concerns of blind students who informed BarBri that its website, mobile application,

and parts of its course materials were not accessible to blind persons, BarBri has denied customers with disabilities the full use and enjoyment of its bar examination prep course.

## RELIEF REQUESTED

### Declaratory Relief

109.    Plaintiffs are entitled to declaratory judgment specifying the rights of individuals with disabilities to access BarBri's services and Defendant's violations of the law.

### Injunctive Relief

110.    Plaintiffs will continue to experience unlawful discrimination as a result of Defendant's refusal to comply with the ADA and Chapter 121. Injunctive relief is necessary so Plaintiffs and all individuals with disabilities can enjoy BarBri and its services to the same extent as those without disabilities as required by law, and to require Defendant to modify, develop, and follow proper programs, policies, procedures, and training for accommodating people who have visual disabilities, including Plaintiffs.

### Damages

111.    Each of the named Plaintiffs and each of the putative Class Members is entitled to a minimum of $300 per violation of the statute under Tex. Hum. Res. Code § 121.004. There is no statutory limit to this penalty.

### Attorneys' Fees and Costs

112.    Plaintiffs are entitled to reasonable attorneys' fees, litigation expenses, and court costs, pursuant to the ADA, 42 U.S.C. §12205, and the Texas Declaratory Judgments Act.

## JURY REQUEST

113.    Plaintiffs respectfully demand a jury trial pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

Accordingly, Plaintiffs respectfully request that this Court:

A.  Declare that BarBri has violated the ADA and Chapter 121;

B.  Permanently enjoin BarBri from violating the ADA and Chapter 121 ;

C.  Certify the proposed Class;

D.  Require BarBri to pay at least $300 to each member of the Class for the harms they suffered,

   or will suffer, due to BarBri's violations of the ADA and Chapter 121;

E.  Award Plaintiffs their reasonable attorneys' fees and costs; and

F.  Issue any further relief as the court may deem appropriate.

Dated: July 19, 2016

<div style="margin-left:40%">

Respectfully Submitted,

  /s/ Wayne Krause Yang___
Wayne Krause Yang
State Bar No. 24032644
Abigail Frank
State Bar No. 24069732
Hani Mirza
State Bar No. 24083512

TEXAS CIVIL RIGHTS PROJECT
501 Elm Street, Ste. #450
Dallas, Texas 75202
   (972) 333-9200 (phone)
   (512) 474-0726 (fax)

COUNSEL FOR INDIVIDUAL PLAINTIFFS

</div>

  /s/ Matthew K. Handley
Matthew K. Handley (*admitted pro hac vice*)
Deepinder K. Goraya (*admitted pro hac vice*)

WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, Suite 400
Washington, DC 20036
  (202) 319-1000 (phone)
  (202) 319-1010 (fax)

COUNSEL FOR ALL PLAINTIFFS

**Certificate of Service**

This is to certify that on this 18th day of July, 2016, I electronically submitted the foregoing document with the clerk of the Court for the U.S. District Court, Northern District of Texas, and using the electronic case filing system, I served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

  /s/ Matthew K. Handley
Matthew K. Handley