In the United States District Court
for the Northern District of Texas
Dallas Division

| | | |
|---|---|---|
| Claire Stanley, Derek Manners, and Christopher Stewart, on behalf of themselves and all others similarly situated, | § § § § | |
| | § | Civil Action No. 3:16-cv-01113-BK |
| Plaintiffs, | § § | |
| v. | § § | |
| Barbri, Inc. aka Barbri Bar Review, | § § | |
| Defendant. | § | |

## Defendant Barbri, Inc.'s Rule 12(b) Motions to Dismiss Plaintiffs' First Amended Complaint and Brief in Support

Respectfully submitted,

Touchstone, Bernays, Johnston, Beall, Smith & Stollenwerck, LLP

By:   s/    R. Wayne Gordon
           R. Wayne Gordon
           Texas Bar No. 08206500
           wayne.gordon@tbjbs.com
           Amie P. Fordan
           Texas Bar No. 24036580
           amie.fordan@tbjbs.com
           4040 Renaissance Tower
           1201 Elm Street
           Dallas, Texas 75270
           Telephone: 214-741-1166
           Facsimile: 214-741-7548
           Attorneys for Defendant Barbri, Inc.

# Table of Contents

Table of Contents ..................................................................................................................... ii

Table of Authorities ................................................................................................................ iii

Factual Background ................................................................................................................. 1

Arguments and Authorities ..................................................................................................... 3

    A.  Plaintiffs' state law claims should be dismissed because the Texas
        statute does not apply to Plaintiffs' complaints. .................................................... 3

    B.  Plaintiffs' claims should be dismissed because Plaintiffs lacked standing
        to assert their claims when they filed their Complaint ........................................ 6

    C.  Plaintiffs' ADA claims for injunctive relief should be dismissed as
        moot. ..................................................................................................................... 9

    D.  Plaintiffs' ADA claims should be dismissed because the ADA does not
        apply to Plaintiffs' complaints. ........................................................................... 10

        1.   There is no clear authority whether the ADA applies to
        cyberspace, but more circuits hold that the ADA only
        regulates discrimination with a nexus to physical places.......................... 11

        2.   Title III prohibits entities from restricting access to the
        goods and services offered at places of public
        accommodation, but it does not require public
        accommodations to alter their goods and services. ..................................... 17

Conclusion and Prayer ............................................................................................................ 20

Certificate of Service ............................................................................................................... 21

# Table of Authorities

## Cases

*Access Now v. Sw. Airlines*,
    227 F. Supp. 2d 1312 (S.D. Fla. 2002) ............................................................ 12, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 11

*Carparts Distrib. Ctr. v. Auto. Wholesaler's Ass'n*,
    37 F.3d 12 (1st Cir. 1994) .................................................................................. 14

*Center for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
    704 F.3d 413, 425 (5th Cir. 2013) ........................................................................ 9

*Chapman v. PacifiCare of Tex., Inc.*,
    Civil Action No. H-02-2188, 2002 U.S. Dist. LEXIS 27926 (S.D. Tex. Aug. 21, 2002) .... 16

*Cullen v. Netflix, Inc.*,
    600 F. App'x 508 (9th Cir. 2015) ....................................................................... 12

*Dabney v. Highland Park Indep. Sch. Dist.*,
    Civil Action No. 3:15-CV-2122-L, 2016 U.S. Dist. LEXIS 44302, at *13-14 (N.D. Tex.
    Mar. 31, 2016) ..................................................................................................... 6

*Davis v. FEC*,
    554 U.S. 724, 734 (2008) ..................................................................................... 7

*Doe v. Mut. of Omaha Ins. Co.*,
    179 F.3d 557 (7th Cir. 1999) .................................................................... 14, 18, 19

*Ford v. Schering-Plough Corp.*,
    145 F.3d 601, 613 (3d Cir. 1998) ...................................................... 12, 16, 17, 19

*Kitty Hawk Aircargo, Inc. v. Chao*,
    418 F.3d 453, 458 (5th Cir. 2005) ........................................................................ 7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 560-61 (1992) ............................................................................... 7

*McCorvey v. Hill*,
    385 F.3d 846, 848 (5th Cir. 2004) ........................................................................ 9

*McNeil v. Time Ins. Co.,*
  205 F.3d 179, 188 (5th Cir. 2000), *cert. denied,* No. 00-848, 2001 U.S. LEXIS 1724 (U.S.
  Feb. 26, 2001) .................................................................................................................. 19

*Nat'l Fed'n of the Blind v. Scribd Inc.,*
  97 F. Supp. 3d 565 (D. Vt. Mar. 19, 2015) ........................................................................ 14

*Nat'l Fed'n of the Blind v. Target Corp.,*
  452 F. Supp. 2d 946, 956 (N.D. Cal. 2006) ............................................................ 12, 13, 14

*Parker v. Metro. Life Ins. Co.,*
  121 F.3d 1006, 1011 (6th Cir. 1997) ................................................................... 12, 16, 17, 19

*Rendon v. Valleycrest Prods.,*
  294 F.3d 1279 (11th Cir. 2002) ......................................................................................... 12

*Schlesinger v. Reservists Comm. to Stop the War,*
  418 U.S. 208, 221 (1974) ..................................................................................................... 7

*Summers v. Earth Island Inst.,*
  555 U.S. 488, 493 (2009) ..................................................................................................... 7

*U.S. Parole Comm'n v. Geraghty,*
  445 U.S. 388 (1980) ............................................................................................................. 9

*Weyer v. Twentieth Century Fox Film Corp.,*
  198 F.3d 1104, 1114 (9th Cir. 2000) ..........................................................................passim

**Statutes**

28 U.S.C. § 12182 .................................................................................................... 11, 13

28 U.S.C. § 12182(a) ................................................................................................. 12, 13

Tex. Hum. Res. Code § 121.001 ...................................................................................... 4

Tex. Hum. Res. Code § 121.0014 .................................................................................... 4

Tex. Hum. Res. Code § 121.002(5) .................................................................................. 5

Tex. Hum. Res. Code § 121.003 ...................................................................................... 5

Tex. Hum. Res. Code § 121.003(a) .................................................................................. 4

Tex. Hum. Res. Code § 121.003(c) .................................................................................. 6

Tex. Hum. Res. Code § 121.003(d) .................................................................................. 6

Tex. Hum. Res. Code § 121.004(b) ............................................................................... 5

**Other Authorities**

75 Fed. Reg. at 43464 ................................................................................................... 15

81 Fed. Reg. at 28664-65 ............................................................................................. 16

DOJ, Final Rule, *Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities,*
56 Fed. Reg. 35544, 35565 (July 26, 1991) ............................................................. 18

DOJ, Proposed Rule, *Nondiscrimination on the Basis of Disability: Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations,*
75 Fed.Reg. 43460 (July 26, 2010) .......................................................................... 14

DOJ, Supplemental Proposed Rule, *Nondiscrimination on the Basis of Disability: Accessibility of Web Information and Services of State and Local Government Entities,*
81 Fed. Reg. 28658 (May 9, 2016) ........................................................................... 14

Public Law 110-325, ADAAA ...................................................................................... 15

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 9

Fed. R. Civ. P. 12(b)(6) .......................................................................................... passim

**Regulations**

28 C.F.R. § 36.104 ....................................................................................................... 13

28 C.F.R. pt. 36 (2013) ........................................................................................... 10, 13

**Defendant Barbri, Inc.'s Rule 12(b) Motions to Dismiss
Plaintiffs' First Amended Complaint
and Brief in Support**

Defendant Barbri, Inc. moves to dismiss the claims and causes of action asserted against it in Plaintiffs' First Amended Complaint filed in the above-referenced case on the following grounds: (1) all of the Plaintiffs' claims under the Chapter 121 of the Texas Human Resources Code should be dismissed for failure to state a claim because the Texas statute does not apply to website accessibility complaints and cannot be asserted by the named Plaintiffs because none of them utilized any Barbri services within the State of Texas; (2) Plaintiffs lack standing because they had not sustained any damages and they had not been discriminated against in violation of the ADA on the date they filed suit; (3) Plaintiffs' claims for injunctive relief should be dismissed as moot; and (4) Plaintiffs' ADA claims should be dismissed because there is no nexus between the alleged discrimination and any physical place of public accommodation, and the ADA does not require public accommodations to alter their goods and services. In support of this Motion, Barbri would show the Court as follows:

**Factual Background**

1.     Plaintiffs Claire Stanley, Derek Manners, and Christopher Stewart originally filed this suit for damages and injunctive relief on the grounds that Barbri would deny them the full use and enjoyment of Barbri's Summer 2016 bar review course, which had not yet started when Plaintiffs filed their original Complaint. *See generally* Plaintiffs' Complaint (Doc. 1). Plaintiffs amended their Complaint on July 19, 2016 after the course had

started and was almost completed. *See generally* Plaintiffs' First Amended Complaint (Doc. 15).

2.      Plaintiffs are visually impaired. Plaintiffs generally allege Barbri has discriminated against them on the basis of their disabilities "[b]y refusing to provide an accessible website, mobile app, and course materials," by refusing to modify its website, mobile app, and course materials, by failing to provide certain materials in a timely manner, by providing materials in inaccessible formats, and by preventing blind students from accessing all the online components of the bar review course with their screen readers.. *See,* Plaintiff's First Amended Complaint (Doc. 15) at ¶¶ 91, 94, 98.

3.      Plaintiffs have a number of specific accessibility complaints with Barbri's website and online study experience. Plaintiffs complain about the accessibility of the StudySmart and Essay Architect software. Plaintiffs complain about their problems with using the video player available on Barbri's website and mobile application. Plaintiffs complain about various online features in the Personal Study Plan sections of the website. In addition to complaints about the website, Plaintiffs also complain that the auxiliary aids provided by Barbri, including filled-in lecture handouts and electronic versions of the printed materials in PDF or Word format, are either not provided timely or are not easy to use or follow. Plaintiffs also complain that the method by which Barbri transmits its auxiliary aids, through OneDrive, is not accessible on all Internet browsers. *See,* Plaintiffs' First Amended Complaint, at ¶¶ 27-64.

4.      As of the date of the filing of this suit, the only named plaintiff who had participated in the Barbri law review course was Claire Stanley. By their own admissions, alt-

hough each of the three plaintiffs had enrolled to take Barbri's Summer 2016 course, the course had not yet started as of the date of the filing of the Complaint. The Plaintiffs have now participated in and completed the Summer 2016 course, which ended in July.

5.      As set forth fully in Barbri's Original Answer to Plaintiffs' First Amended Complaint, which will be filed contemporaneously with this Motion and Brief, Barbri denies that it has violated the ADA or the Texas Human Resources Code.

### Arguments and Authorities

**A. Plaintiffs' state law claims should be dismissed because the Texas statute does not apply to Plaintiffs' complaints.**

6.      Chapter 121 of the Texas Human Resources Code does not impose any legal obligations on companies that operate public facilities to make their websites or other online offerings accessible to the visually impaired. Rather, Chapter 121 of the Texas Human Resources Code only prohibits discrimination through denial of the use of enjoyment of public facilities, but does not impose any requirements with respect to the Internet or computer-based services. In addition, Chapter 121 only regulates conduct in public facilities within the State of Texas. Because the Plaintiffs' claims do not arise out of complaints involving accessibility to public facilities within this State, Plaintiffs have failed to state a valid cause of action for which relief may be granted under Chapter 121, and the Plaintiffs' claims should be dismissed. Fed. R. Civ. P. 12(b)(6).

7.      One of the purposes of Chapter 121 is to "ensure that all *Texans* with disabilities have the opportunity and support necessary to work in individualized, competitive employment in the community and to have choices about their work and careers." Tex.

Hum. Res. Code § 121.0014 (emphasis added). The State of Texas maintains a policy of encouraging and enabling "persons with disabilities to participate fully in the social and economic life *of the state*, to achieve maximum independence, to become gainfully employed, and to otherwise fully enjoy and use all public facilities available *within the state*." Tex. Hum. Res. Code 121.001 (emphasis added). Chapter 121 mandates that persons with disabilities have the same right as persons without disabilities to the full use and enjoyment of any public facility *in the state.* Tex. Hum. Res. Code § 121.003(a). Consequently, to the extent that Chapter 121 governs the conduct of businesses relative to individuals with disabilities, such conduct and such disabled individuals must be within the State of Texas to fall within the statutory requirements and protections of Chapter 121.

8.      Not one of the Plaintiffs is a resident of Texas, and not one of the Plaintiffs has alleged that he or she utilized Barbri's services within the State of Texas. *See generally* Plaintiffs' First Amended Complaint. Plaintiff Stanley admits she is a resident of Maryland who was studying for the Pennsylvania bar exam. Plaintiffs' First Amended Complaint at ¶ 7. Plaintiffs Stewart and Manners do not plead where they reside or which bar exam they prepared to take, but they also do not allege they took the Barbri course in Texas or in preparation for the Texas bar exam. *See, generally*, Plaintiffs' First Amended Complaint. Because not one of the named Plaintiffs alleges he or she has been discriminated against in Texas, the Plaintiffs have failed to state a claim for which relief may be granted against Barbri under Chapter 121. Plaintiffs' claim for injunctive and

monetary relief under Chapter 121 should therefore be dismissed. Fed. R. Civ. P. 12(b)(6).

9.      In addition, Chapter 121 only allows a private cause of action to recover damages for violation of § 121.003, which only applies to alleged discrimination within public facilities. Tex. Hum. Res. Code § 121.004(b); Tex. Hum. Res. Code § 121.003. The allegations against Barbri in this suit, however, do not implicate discrimination by or in a public facility. "Public facility" is statutorily defined to include various physical locations and modes of transportation, including "a retail business, commercial establishment, or office building to which the general public is invited;…other educational facility; …and any other place of public accommodation, amusement, convenience, or resort to which the general public or any classification of persons from the general public is regularly, normally, or customarily invited." Tex. Hum. Res. Code § 121.002(5). The definition of "public facility" is not identical to the definition of public accommodation or place of public accommodation under the ADA. Consequently, Plaintiffs' allegation that "Barbri is a public accommodation under the ADA and a commercial establishment operating in Texas" is not sufficient to demonstrate that Barbri or barbri.com fits within the statutory definition of "public facility."

10.     All of Plaintiffs' complaints about Barbri arise from alleged accessibility issues with Barbri's online or electronically-formatted materials. There are no complaints by the Plaintiffs about the full use and enjoyment of any public facilities or physical locations operated by Barbri. But the statutory term "public facility" cannot be interpreted to include cyberspace or the Internet. By its express terms, Chapter 121 only applies to

admission and access to physical public facilities. *See Dabney v. Highland Park Indep. Sch. Dist.*, Civil Action No. 3:15-CV-2122-L, 2016 U.S. Dist. LEXIS 44302, at *13-14 (N.D. Tex. Mar. 31, 2016) (rejecting plaintiffs' contention that Chapter 121 can be interpreted to include more than physical access to buildings). Actionable discrimination under Chapter 121 occurs when persons with disabilities are denied admittance to a public facility or physical location. Tex. Hum. Res. Code § 121.003(c). To constitute discrimination, not only must the public facility fail to either make reasonable accommodations or provide auxiliary aids and services, but the entity must also refuse to allow a person with a disability to use or be admitted to any public facility. Tex. Hum. Res. Code § 121.003(d). Because the Plaintiffs only allege lack of accessibility to online or electronic materials and do not allege accessibility issues in or at a physical location, Plaintiffs have failed to state a valid cause of action for which relief can be granted under Chapter 121. The claims against Barbri should therefore be dismissed. Fed. R. Civ. P. 12(b)(6).

### B. Plaintiffs' claims should be dismissed because Plaintiffs lacked standing to assert their claims when they filed their Complaint

11.     Barbri would show that Plaintiffs lack standing to assert their claims in this action because, by their own admission, they had not participated in the Summer 2016 bar review course before the date they filed this lawsuit. Consequently, Plaintiffs could not have been discriminated against by Barbri prior to the filing of this lawsuit, and therefore they lacked any legal injury. Barbri moves to dismiss their claims for lack of subject matter jurisdiction because they lack standing and their claims were not ripe at the time of the filing of the suit.

12.     A plaintiff bears the burden to show he has standing for each type of relief sought. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Standing ensures "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974). To establish standing, (1) the plaintiff must have suffered an injury in fact which is concrete and particularized and actual or imminent; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Standing is determined as of the commencement of the suit. *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 458 (5th Cir. 2005).

13.     "A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis v. FEC*, 554 U.S. 724, 734 (2008). Plaintiffs alleged in their Original Complaint that they had enrolled in Barbri's summer 2016 bar review course and "will suffer if BarBri is allowed to continue to discriminate against blind students in violation of federal and state law." Plaintiffs' Complaint (Doc. 1) at ¶ 3. However, in light of the remaining allegations in these Plaintiffs' Complaint, Plaintiffs cannot substantiate any claim that discrimination or legal injury was imminent as of the date they filed this suit, and consequently they lack subject matter jurisdiction to continue this suit.

14.     Plaintiffs complain that Barbri has discriminated against them by refusing to provide an accessible website, mobile application and course materials, thus denying

them full and equal enjoyment of Barbri's goods and services. Plaintiffs' Complaint (Doc. 1) at ¶ 76; Plaintiffs' First Amended Complaint (Doc. 15) at ¶ 91. Plaintiffs specifically identify the discrimination as failure to make reasonable modifications and accommodations and failing to take steps to ensure that no person with a disability is denied service due to the absence of auxiliary aids. Plaintiffs' Complaint (Doc. 1) at ¶ 78; Plaintiffs' First Amended Complaint (Doc. 15) at ¶ 93. Plaintiff further allege: "[b]y refusing to modify its website, mobile app, and course materials, even when Plaintiffs have made reasonable requests and have lodged complaints…Barbri has denied Plaintiffs and continues to deny Plaintiffs, on the basis of their disability, the same access to Barbri's goods, services, facilities, privileges, advantages, and/or accommodations as the access provided to individuals without disabilities." Plaintiffs' Complaint (Doc. 1) at ¶ 79; Plaintiffs' First Amended Complaint (Doc. 15) at ¶ 94.

15.     But as fully acknowledged and judicially admitted by all of the Plaintiffs in their original Complaint, the summer 2016 Barbri bar review course had not yet started as of the date they filed their Complaint. As a result, regardless of what had happened in past bar review courses, Barbri had not had any opportunity to address Plaintiffs' requests for modifications or auxiliary aids as of the date of the filing of the Complaint because the course had not even started. Because their complaints of discrimination arise from conduct that had not yet occurred, rather than from a continuing policy or procedure or a more permanent condition, Plaintiffs cannot show that the discrimination was imminent at the time they filed suit. Consequently, when Plaintiffs filed this suit, whether they would be discriminated against in the Summer 2016 bar review

course was merely speculative, not actual or imminent. None of the Plaintiffs, therefore, had any standing to sue Barbri under the ADA or the Texas Human Resources Code. And events that ultimately occurred once the course started did not change or affect the Plaintiffs' lack of standing on the date they filed suit. These claims should therefore be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

### C. Plaintiffs' ADA claims for injunctive relief should be dismissed as moot.

16.     Plaintiffs' ADA claims for injunctive relief are moot because the Summer 2016 course is now over, and consequently the Plaintiffs cannot obtain injunctive relief that will in any way affect the Summer 2016 course.

17.     Mootness is the doctrine of standing set in a time frame; the requisite personal interest that must exist at the commencement of the litigation (standing) must continue through its existence (mootness). *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). The mootness doctrine ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit, including the pendency of the appeal. *McCorvey v. Hill*, 385 F.3d 846, 848 (5th Cir. 2004). Even if a plaintiff has standing at the commencement of a suit, if intervening circumstances result in the court no longer being able to grant meaningful relief to the plaintiff, the case is deemed moot and the federal district court has no constitutional authority to resolve the dispute. *Center for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013).

18.     As set forth in Plaintiffs' First Amended Complaint, all of the injunctive relief sought by Plaintiffs relates specifically and exclusively to the Summer 2016 course, because Plaintiffs' complaints arise out of their preparation for the July 2016 bar exam.

The July 2016 bar exam has already occurred. Regardless of these Plaintiffs' individual results on that bar exam, their Barbri course is over, and no injunctive relief awarded in this suit could change the circumstances of the summer 2016 course. Consequently, this court can no longer grant meaningful injunctive relief to the plaintiffs, and their complaints are moot.

19.     To the extent it could even be argued that when this suit was filed Plaintiffs had standing to sue for alleged future discrimination during the Summer 2016 course, Plaintiffs clearly had no standing to sue for injunctive relief pertaining to any future bar review courses after the Summer 2016 course. The only bar review course that was even arguably actual or imminent was the Summer 2016 course; there is no allegation that the Plaintiffs were also enrolled in or certain to attend any bar review courses after the Summer 2016 course. Consequently, Plaintiffs cannot use the potential events that may occur during future bar review courses as a basis for avoiding mootness. Because the Summer 2016 course is now over and completed, there is no injury that can be redressed by a favorable decision for the Plaintiffs on their ADA claim for injunctive relief. Consequently, their claims for injunctive relief are all moot and should be dismissed.

### D. Plaintiffs' ADA claims should be dismissed because the ADA does not apply to Plaintiffs' complaints.

20.     The ADA (Title III) and corresponding regulations at 28 C.F.R. pt. 36 (2013) do not specifically require the modifications to website content and materials as requested or referred to in Plaintiffs' First Amended Complaint. Software and programs made

available to bar review students on barbri.com are not subject to regulation under the ADA because Barbri's website programs and materials do not affect access to a physical place of public accommodation, and the barbri.com website is not a place of public accommodation under the ADA. Because Plaintiffs have not alleged sufficient facts to demonstrate a nexus between the allegedly discriminatory conduct and a physical place of accommodation, all Plaintiffs have failed to plead sufficient facts to state a valid cause of action for which relief may be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In addition, the relief sought by Plaintiffs is an alteration of Barbri's products, rather than mere access to a place of public accommodation. The ADA does not require such requested alterations. Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs' claims for injunctive relief should be dismissed.

1. **There is no clear authority whether the ADA applies to cyberspace, but more circuits hold that the ADA only regulates discrimination with a nexus to physical places.**

21.     Title III of the ADA generally prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 28 U.S.C. § 12182. But Title III has no provisions that specifically address whether or how the ADA applies to cyberspace. Federal courts throughout the country are currently split on whether Title III requires website owners and operators to make their websites accessible to blind users. Courts in the Ninth, Sixth, Third, and Eleventh Circuits have held that places of public accommodation are not subject to regulation by the ADA unless there is a suffi-

cient nexus between the discrimination alleged and a physical place. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000); *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 956 (N.D. Cal. 2006); *Access Now v. Sw. Airlines*, 227 F. Supp. 2d 1312 (S.D. Fla. 2002); *Cullen v. Netflix, Inc.*, 600 F. App'x 508 (9th Cir. 2015); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1011 (6th Cir. 1997); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir. 1998); *Rendon v. Valleycrest Prods.*, 294 F.3d 1279 (11th Cir. 2002).

22.     The ADA prohibits discrimination in the full use and enjoyment of goods and services "of any place of public accommodation." 28 U.S.C. § 12182(a). The term "public accommodation" is defined to include a variety of establishments that are all actual, physical places where certain goods or services are available to the public. *Weyer*, 198 F.3d at 1114. In light of use of the phrase "place of public accommodation," the statute should be interpreted to require some connection between the good or service complained of and an actual physical place. *Id.* (citing *Parker*, 121 F.3d at 1015). To hold that the ADA regulates access to the full use and enjoyment of all goods and services provided by an entity that otherwise fits the definition of "public accommodation" would require the court to disregard the words "place of" within the statutory provision. Consequently, Title III of the ADA should not be interpreted to regulate allegedly discriminatory practices unrelated to physical places. *Id.* Considering that the Internet does not physically exist in any particular geographical location, the statute does not clearly include cyberspace or the Internet within its scope. *Access Now*, 227 F. Supp. 2d at 1321.

"To expand the ADA to cover 'virtual' spaces would be to create new rights without well-defined standards." *Id.* at 1318.

23.     The regulations promulgated by the Department of Justice at 28 C.F.R. pt. 36 apply detailed and specific standards for implementation of the ADA by public accommodations, but there are currently no regulations specifically related to websites or Internet content. In fact, in the regulations, "place of public accommodation" is defined to mean "a facility operated by a private entity whose operations affect commerce" that falls within a list of various categories consistent with the ADA definition of public accommodation; the fact that the regulations use the word "facility" in the definition reinforces the position that there is a distinction between a public accommodation and a place of public accommodation. *Id.* § 36.104. Because § 12182(a) uses the term "of a place of public accommodation," Congress must have intended the ADA to only regulate conduct with a connection to physical places.

24.     The Courts that have faced this issue with respect to websites specifically have required the nexus between the alleged discrimination and a physical place. *Nat'l Fed'n of the Blind*, 452 F. Supp. 2d at 956; *Access Now*, 227 F. Supp. 2d at 1321. Section 12182 prohibits denial of access to goods and services of a place of public accommodation. Analyzing the statute in the context of an allegedly inaccessible Internet website for a retail store, a federal California district court noted that the statute would apply to the services *of* the place of public accommodation, not *in* the place of public accommodation. *Nat'l Fed'n of the Blind*, 452 F. Supp. 2d at 953. The district court clarified that if a website's inaccessibility impedes the full and equal enjoyment of goods and services of-

fered at the physical stores, then the ADA applies. *Id.* at 956. However, to the extent a website offers information and services unconnected to the physical stores and which do not affect the enjoyment of the goods and services offered in the physical stores, the ADA does not apply. *Id.*

25.     In contrast, courts in the Seventh, First, and Second Circuits, however, have held that the ADA covers discrimination suits against entities that qualify as public accommodations regardless of whether the discrimination bears any nexus to a physical location. *Carparts Distrib. Ctr. v. Auto. Wholesaler's Ass'n,* 37 F.3d 12 (1st Cir. 1994); *Doe v. Mut. of Omaha Ins. Co.,* 179 F.3d 557 (7th Cir. 1999); *Nat'l Fed'n of the Blind v. Scribd Inc.,* 97 F. Supp. 3d 565 (D. Vt. Mar. 19, 2015). The Department of Justice, which is tasked with promulgating guideline regulations for enforcing the ADA, has also taken the position that the ADA covers Web information under both Title II and Title III. The Department has issued Advance Notices of Proposed Rulemaking with respect to accessibility of web information under both Title II and Title III, but the rulemaking is still in the public comment phase and no new rules have yet been adopted. *See,* DOJ, Proposed Rule, *Nondiscrimination on the Basis of Disability: Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations,* 75 Fed.Reg. 43460 (July 26, 2010); DOJ, Supplemental Proposed Rule, *Nondiscrimination on the Basis of Disability: Accessibility of Web Information and Services of State and Local Government Entities,* 81 Fed. Reg. 28658 (May 9, 2016). As acknowledged by the Department of Justice in its July 26, 2010 advance notice of proposed rulemaking, "a clear requirement that provides the disability community consistent access to Web sites and covered entities clear guidance

on what is required under the ADA does not exist" *See* 75 Fed. Reg. at 43464[1]. The proposed rules and requests for public comments further demonstrate: (a) there are no clear answers as to whether the ADA applies to Web information that bears no causal nexus to physical places (an issue that is best addressed by the legislature); and (b) even if the ADA does apply to virtual places of accommodation as currently enacted, there are no clear answers as to what constitutes discriminatory conduct under the current standards and guidelines.

26.     The legislature has not provided guidance in the form of amendments to the ADA to address the holdings in those courts that would not apply the ADA to websites without a causal nexus between the ADA and a physical place of accommodation. The ADA was amended most recently in 2008 (Public Law 110-325, ADAAA) after the various circuit courts had issued differing positions on whether the ADA requires a nexus between the alleged discrimination and a physical place. Because Congress did not amend or clarify the ADA in 2008 to clearly include websites and cyberspace within the scope of the ADA, Congress must not have seen a need to overrule the holdings in the Ninth, Third, and Sixth Circuits that require the nexus to physical places.

27.     Furthermore, as demonstrated by the Advance Notices of Proposed Rulemaking that have been issued by the Department of Justice, even if the ADA does require website accessibility, setting and implementing website accessibility standards is a compli-

---

[1] "Although the Department [of Justice] has been clear that the ADA applies to Web sites of private entities that meet the definition of "public accommodations," inconsistent court decisions, differing standards for determining Web accessibility, and repeated calls for Department action indicate remaining uncertainty regarding the applicability of the ADA to Web sites of entities covered by Title III." 75 Fed. Reg. at 43464.

cated process that will not take effect for a number of years. 81 Fed. Reg. at 28664-65 ("Therefore, the Department is considering a two-year implementation timeframe for most public entities in an effort to balance the importance of accessibility for individuals with disabilities with the resource challenges faced by public entities."). Courts should not enable individuals to disregard the legislative and regulatory process by seeking to apply accessibility standards established solely through litigation.

28.     The U.S. Supreme Court has not yet considered this issue, leaving lower courts to follow the precedent set by the various circuit courts. The Fifth Circuit has not yet specifically addressed this issue of whether the ADA requires public accommodations to make their websites accessible. However, at least one federal district court in Texas has followed the precedent set by *Weyer, Ford,* and *Parker* in finding that the ADA does not provide protection from discrimination that is unrelated to physical places. *Chapman v. PacifiCare of Tex., Inc.*, Civil Action No. H-02-2188, 2002 U.S. Dist. LEXIS 27926 (S.D. Tex. Aug. 21, 2002). Considering that more circuits have adopted the nexus concept and, as explained below, the Fifth Circuit has adopted other arguments advanced in *Weyer, Ford,* and *Parker,* it is likely the Fifth Circuit would apply the nexus concept to cases involving website accessibility.

29.     In their Complaint, Plaintiffs contend the ADA applies because Barbri owns or operates a place of public accommodation, namely its lecture halls and offices, and because the Plaintiffs' use of the online and electronic materials affects their use and enjoyment of the lectures at the live lecture halls. *See,* Plaintiffs' First Amended Complaint (Doc. 15) at ¶¶ 87-89. There is no allegation in the First Amended Complaint, however,

that any of the alleged discrimination arises out of access to these lecture halls and physical spaces or to the information provided at the lectures that take place at the lecture halls. Rather, as explained above, Plaintiffs' allegations exclusively relate to programs and software made available on barbri.com or on mobile applications, as well as electronically-formatted materials. Plaintiffs' First Amended Complaint (Doc. 15) at ¶¶27-55, 61 (barbri.com) and ¶¶56-57 (course materials in electronic format). As acknowledged by Plaintiffs in their First Amended Complaint, the lectures are a separate and different learning component of the bar review course than the online practice testing and substantive law outlines, but the discriminatory complaints only relate to the online practice testing and format of the substantive law outlines. *See,* Plaintiffs' First Amended Complaint at ¶ 44. Consequently, because there are no allegations about separate or unequal treatment of the visually impaired at the physical lecture halls, there is no nexus between the Plaintiffs' complaints and the services actually provided at a physical or concrete place. Plaintiffs' ADA claims should therefore be dismissed for failure to allege sufficient nexus between the alleged discrimination and a physical place of accommodation. Fed. R. Civ. P. 12(b)(6).

**2. Title III prohibits entities from restricting access to the goods and services offered at places of public accommodation, but it does not require public accommodations to alter their goods and services.**

30.     The *Weyer, Ford,* and *Parker* cases, which held that the ADA does not apply unless a nexus exists between the alleged discrimination and a physical place, were not cases involving Internet websites. Rather, those cases involved allegations that insurance policies issued to or for the benefit of the plaintiffs violated the ADA because

the plaintiffs were denied access to certain benefits on the basis of their disabilities. The courts in those cases noted the ADA prohibits public accommodations from denying access to the goods and services at their physical location, whatever those goods and services may be, but the ADA does not require the provision of different goods and services. *Weyer*, 198 F.3d at 1115. Thus, the ADA prohibits a bookstore from discriminating against the disabled by denying access to the store, but the bookstore is not required to sell books available in Braille as well as print. *Id.; see also,* DOJ, Final Rule, *Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities,* 56 Fed. Reg. 35544, 35565 (July 26, 1991) ("Therefore, § 36.302 would not require the inventory of goods provided by a public accommodation to be altered to include goods with accessibility features."); *Doe*, 179 F.3d at 560, 563 (Title III "does not require a seller to alter his product to make it equally valuable to the disabled and to the nondisabled"). "The purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided." 56 Fed. Reg. at 35571.

31.     The Plaintiffs' allegations of discrimination primarily arise from the nature of the goods offered by Barbri rather than allegedly arising from access to the goods them-selves. For example, Plaintiffs complain about Barbri's StudySmart program, its AMP program, its Essay Architect program, and its online video player for its lectures on the grounds these online features do not work with the Plaintiffs' screen reader technology. These are complaints about the nature of Barbri's products in relation to the Plaintiffs'

visual limitations, rather than complaints about Barbri's exclusion of the Plaintiffs from the full and equal enjoyment of its bar review course due to their disabilities.

32.     Although the Fifth Circuit has not addressed the argument about whether a website can be a place of public accommodation subject to the ADA, the Fifth Circuit has followed the reasoning of *Weyer, Parker, Ford* and *Doe* to hold that the ADA does not require public accommodations to modify or alter their goods and services to avoid violating the ADA. *McNeil v. Time Ins. Co.,* 205 F.3d 179, 188 (5th Cir. 2000), *cert. denied,* No. 00-848, 2001 U.S. LEXIS 1724 (U.S. Feb. 26, 2001). The Fifth Circuit noted in *McNeil* that "[t]he goods and services that the business offers exist *a priori* and independently from any discrimination. Stated differently, the goods and services referred to in the statute are simply those that the business normally offers." *Id.* at 186-87. Similarly, the programs and software offered through the barbri.com website are Barbri's goods and services; requiring Barbri to make them accessible would require Barbri to modify or alter its goods and services in order to avoid violating Title III. *Id.* at 188. Because the Fifth Circuit would reject such a requirement, based on this precedent, the Fifth Circuit would likely hold Plaintiffs have not pleaded a claim for which relief may be granted under the ADA.

33.     For all of these reasons, Barbri therefore respectfully moves that this Court grant this Motion to Dismiss with respect to the Plaintiffs' ADA claims on the grounds that Plaintiffs have failed to plead facts to show sufficient nexus between the allegedly discriminatory conduct and Barbri's physical locations, and on the grounds Plaintiffs have failed to allege claims for which relief may be granted under the ADA.

## Conclusion and Prayer

As explained herein, the Plaintiffs have failed to state claims upon which relief may be granted under both the ADA and Chapter 121 of the Texas Human Resources Code. In addition, none of the Plaintiffs have standing to assert claims under the ADA or the Texas Human Resources Code. For all these reasons, Defendant Barbri, Inc. respectfully moves that the Court dismiss all of the Plaintiffs' claims and causes of action against Barbri pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, and for such other and further relief to which Barbri, Inc. may show itself to be justly entitled and will ever pray.

Dated this 3rd day of October, 2016.

Respectfully submitted,

Touchstone, Bernays, Johnston, Beall, Smith & Stollenwerck, LLP


By:      s/ R. Wayne Gordon
R. Wayne Gordon
Texas Bar No. 08206500
wayne.gordon@tbjbs.com
Amie P. Fordan
Texas Bar No. 24036580
amie.fordan@tbjbs.com
4040 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Telephone: 214-741-1166
Facsimile: 214-741-7548
Attorneys for Defendant Barbri, Inc.

### Certificate of Service

This is to certify that on this 3rd day of October, 2016, I electronically submitted the foregoing document with the clerk of the Court for the U.S. District Court, Northern District of Texas, and using the electronic case filing system, I served all counsel of record electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).


s/  R. Wayne Gordon
R. Wayne Gordon