## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

_____

| | |
|---|---|
| CLAIRE STANLEY, DEREK MANNERS, and CHRISTOPHER STEWART, on behalf of themselves and all others similarly situated, | ) ) ) ) ) |
| *Plaintiffs,* | ) ) |
| | ) Civil Action No. 16-cv-01113-BK |
| *v.* | ) ) |
| | ) |
| BARBRI INC., AKA BARBRI BAR REVIEW, | ) ) |
| *Defendant.* | ) ) |

_____ )

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................... 1

II.   STANDARD OF REVIEW ......................................................................................... 3

III.  ARGUMENT ............................................................................................................... 4

   A.   Plaintiffs Have Standing To Bring Their Claims............................................................. 4

     1.   Plaintiffs' Claims Are Ripe ......................................................................................... 4

     2.   Plaintiffs' Claims Are Not Moot.................................................................................. 7

     3.   Plaintiffs Are Recognized Aggrieved Parties under the Texas Human Resources Code. 9

   B.   The Complaint Adequately Alleges That Barbri's Services Are Covered by the
       Accessibility Requirements of the ADA and Texas Human Resources Code.................. 12

     1.   Barbri is A Private Entity Offering a Course Related to Licensing for Professional
        Purposes, and, Accordingly, Is Covered by the ADA and Texas Human Resources
        Code. ........................................................................................................................... 12

     2.   Barbri is a Place of Public Accommodation under the ADA........................................ 14

        a.   Barbri's Use of Websites and Applications Does Not Change the Place of
           Public Accommodation Analysis…………………………………….……..15

        b.   Title III Requires Public Accommodations to Provide Appropriate Auxiliary
           Aids and Services for Effective Communication, which Include Screen
           Reader Software and Accessible Electronic and Information Technology………17

        c.   Plaintiffs Are Not Requesting Relief under the ADA that would Require
           Defendant to Modify the Content of its Bar Review Materials……………..…..19

        d.   Plaintiffs Have Established a Strong Nexus between Barbri's Website,
           Mobile Application, and Physical Place of Public Accommodation…………....20

        e.   Barbri's Website and Mobile Application Are Covered by the ADA Because
           Cyberspace is A Place of Public Accommodation………………………….…..22

     3.   Barbri is a Public Facility under the Texas Human Resources Code............................ 24

## TABLE OF AUTHORITIES

**Cases**

*Access Now v. Sw. Airlines*, 227 F. Supp. 2d 1312 (S.D. Fla. 2002) ..................................... 20, 21

*Anderson v. Dassault Falcon Jet Corp.*, Case No. 1:01-CV-640, 2003 U.S. Dist. LEXIS 17843

    (W.D. Mich Sept. 30, 2003) .............................................................................................. 11

*Badgley v. Law Sch. Admission Council, Inc.*, 4:99cv-0103-M, 2000 U.S. Dist. LEXIS 16925

    (N.D. Tex. Aug. 24, 2000) ............................................................................................... 25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 4

*Bell v. Hood*, 327 U.S. 678 (1946) ............................................................................................... 3

*Betancourt v. Federated Dep't Stores*, 732 F. Supp. 2d 696 (W.D. Tex. 2010) ........................... 4

*Boelens v. Redman Homes, Inc.*, 759 F.2d 504 (5th Cir. 1985) ..................................................... 6

*Budge v. Post*, 643 F.2d 372 (5th Cir. 1981) .............................................................................. 11

*Carparts Distrib. Ctr. v. Auto. Wholesaler's Ass'n*, 37 F.3d 12 (1st Cir. 1994) ......................... 23

*Caton v. Leach Corp.*, 896 F.2d 939 (5th Cir. 1990) ................................................................... 11

*Chapman v. PacifiCare of Texas*, H-02-2188, 2002 U.S. Dist. LEXIS 27926 (S.D. Tex. Aug. 21,

    2002) ............................................................................................................................... 22

*Cruz v. Hauck*, 627 F.2d 710 (5th Cir. 1980) ......................................................................... 7, 8

*Cullen v. Netflix, Inc.*, 600 F. App'x 508 (9th Cir. 2015) ..................................................... 20, 21

*Dabney v. Highland Park Indep. Sch. Dist.*, Civil Action No. 3:15-CV-2122-L, 2016 U.S. Dist.

    LEXIS 44302 (N.D. Tex. Mar. 31, 2016) ..................................................................... 24, 25

*Dist. Of Columbia v. Heller*, 554 U.S. 570 (2008) ..................................................................... 10

*Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir. 1999) ................................................... 23

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) ................................................. 4

*Ford v. Schering-Plough Corp.*, 145 F. 3d 601 (3d Cir. 1998) ............................................. 20, 21

*Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2011) .............................................................. 5

*Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570 (S.D. Tex. 2014) .............................................. 4

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000) ...................... 10

*Hunter v. Branch Banking & Trust Co.,* No. 3:12-CV-2437-D, 2013 U.S. Dist. LEXIS 113102

    (N.D. Tex. Aug. 12, 2013) ......................................................................................................... 5

*Kelly v. Ford Motor Co.*, 933 F. Supp. 465 (E.D. Pa. 1996) ........................................................ 11

*Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453 (5th Cir. 2005) ................................................. 6

*Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) ......................................................... 3

*McNeil v. Time Ins. Co.,* 205 F.3d 179 (5th Cir. 2000) ................................................................ 19

*Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169 (5th Cir. 1994) ................................................. 5

*Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) ............................................................. 16-18, 20

*Nat'l Assoc. of the Deaf v. Netflix*, 869 F. Supp. 2d 196 (D. Mass. 2012) ............................. 19, 23

*Nat'l Assoc. of the Deaf* v. *Harvard Univ.*, Civil Action No. 3:15-cv-300024-MGM, 2016 U.S.

    Dist. LEXIS 120121 (D. Mass. Feb. 9, 2016) ........................................................................ 19

*Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. Mar. 19, 2015) ................... 23

*Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006) ...... 15, 16, 20, 21

*Pallozzi v. Allstate Life Insurance Co.* 198 F.3d 28 (2d Cir. 1999) ........................................ 15, 16

*Parker v. Metro Life Ins. Co.,* 121 F. 3d 1006 (6th Cir. 1997) .............................................. 20, 21

*Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 Fed.Appx. 180 (5th Cir. 2015) ..................... 25

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) .............................................................. 3

*Ramos v. Uber Techs., Inc.*, No. SA-14-CA-502-XR, 2015 U.S. Dist. LEXIS 20914 (W.D. Tex.

    Feb. 20, 2015) ......................................................................................................................... 13

*Rendon v. Valleycrest Prods.*, 294 F.3d 1279 (11th Cir. 2002) ............................................. 20, 21

*Roe v. Wade*, 410 U.S. 113 (1973) .......................................................................... 7

*Scherr v. Marriott Int'l, Inc.,* 703 F.3d 1069, 1075 (7th Cir. 2013) ........................ 5

*Schraer v. Tex. Health & Human Servs. Comm'n*, No. 13-12-00702-cv, 2014 Tex. App. LEXIS
   1569 (Tex. App. Feb. 13, 2014). .................................................................... 9

*Specht v. Netscape Comm. Corp.*, 306 F.3d 17 (2nd Cir. 2002) ................................. 22

*Tel–Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134 (5th Cir. 1992) .............. 3, 4

*U.S. v. Harcourt Brace Legal & Prof'l Publ., Inc.*, 94-cv-3295, 1994 U.S. Dist LEXIS 22007
   (N.D. Ill Jun. 23, 1994) ................................................................................... 14

*Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013). ................. 9

*Villas at Parkside Partners v. City of Farmers Branch*, 245 F.R.D. 551 (N.D. Tex. 2007) ...... 5, 6

*Ward v. Hudnell*, 366 F.2d 247 (5th Cir. 1966) ......................................................... 3

*Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000) ............... 20, 21

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) ................................................. 3

**Statutes**

42 U.S.C. § 12181 .................................................................................................. 14

42 U.S.C. § 12182 .................................................................................................. 15

Tex. Hum. Res. Code § 121.002 .......................................................................... 9, 12, 24

Tex. Hum. Res. Code § 121.003 .......................................................................... 9, 25

Tex. Hum. Res. Code § 121.004 .......................................................................... 9

Tex. Hum. Res. Code § 121.011 .......................................................................... 2, 12, 25

Tex. Hum. Res. Code § 121.0014 ........................................................................ 9

**Regulations**

28 C.F.R. § 36.102 .............................................................................................. 2, 12

28 C.F.R. § 36.104 ............................................................................................................ 22

28 C.F.R. § 36.303. .................................................................................................. 17, 19, 20

28 C.F.R. § 309. ....................................................................................................... 13, 17, 20

## Other Authorities

H.R. Conf. Rep. No. 101-596 at 67-68 (1990), reprinted in 1990 U.S.C.C.A.N. 565, 576-77 .... 23

H.R. Conf. Rep. 101-485 (II) at 108, reprinted in 1990 U.S.C.C.A.N. at 391. ...................... 23, 24

Letter from Deval L. Patrick, Assistant Attorney General, to Senator Tom Harkin (Sept. 9, 1996),

   (Oct. 31, 2016, 5:20 PM),

      http://www.justice.gov/crt/foia/readingroom/frequent_requests/ada_tal/tal712.txt. ................ 17

Restat. 2d. of Conflict of Laws § 187 (2nd 1988). ...................................................................... 11

S. Rep. No. 101-116, 59 (1990) ................................................................................................ 23

Statement of Interest of the United States of America at 10, *Nat'l Assoc. of the Deaf v. Mass.*

   *Inst. of Tech.*, Civil Action No. 3:15-cv-300024-MGM, (D. Mass.) *available at*

   https://www.ada.gov/briefs/mit_soi.pdf .................................................................................. 18

75 Fed Reg. 43,460, 463. .......................................................................................................... 18, 19

Plaintiffs respectfully submit this memorandum of law in opposition to Defendant's Motion to Dismiss the Amended Complaint.

## I.   INTRODUCTION

Plaintiffs are three recent law school graduates, who are blind and find that their final hurdle to entering the practice of law (namely, preparing for and passing the bar exam) has been made significantly, needlessly and unlawfully difficult because the bar exam preparation course offered by Defendant Barbri is inaccessible to blind students. *See* First Amended Complaint ("FAC") at ¶¶ 1, 3, 61.  The barriers to accessibility encountered by Plaintiffs are myriad, including the inability to navigate and search through critical substantive lectures on Barbri's website and mobile application as sighted users are able to do; delayed provision of accessible course materials, including materials related to lectures; and inability to access various program features, including: 1) the Personal Study Plan to monitor the schedule of assignments and to monitor a student's progress, 2) Essay Architect, which provides immediate feedback on the organization and structure of essays; and 3) Barbri AMP, which allows students to master black letter law by focusing multiple choice questions on areas requiring additional study.  FAC at ¶¶ 41, 48, 49, 51-57, 61.  Efforts to convince Defendant to accommodate Plaintiffs and the putative nationwide class of blind students who take Defendant's course (the most popular and utilized bar review course in the country) have been unavailing, resulting in the instant action.

Rather than comply with federal and local disability laws, Defendant Barbri, relying on specious arguments, now asks this Court to dismiss Plaintiffs' claims.  Defendant's arguments fall into two categories.  First, Defendant argues that Plaintiffs lack standing to bring their claims, incredibly contending that Plaintiffs claims have been brought either too early or too late. Apparently, it is Barbri's belief that any civil action brought against it for failing to provide accessible courses must be commenced after a course begins, and concluded before that course ends

1

(*i.e.*, in the span of only a few weeks).  Barbri's contention is contrary to the well-established law governing ripeness and mootness of claims, and it demonstrates the extremes to which Barbri will go to try to avoid its legal obligation to accommodate its students with disabilities.  Similarly off-base is Barbri's argument that Plaintiffs' claim under the Texas Human Resources Code can only apply to Texans (and even then only to Texans physically located in Texas).  Nowhere does the statute provide for this limitation, and, moreover, Barbri has specifically required each and every applicant for its services to agree that Texas law applies to claims against Barbri (and that Texas is the only available forum to litigate such claims).  Barbri now wants to have its cake and eat it too, seeking to apply Texas law when it so desires, and not apply it when it does not like the result.

Second, Barbri wrongly contends that the substantive accessibility requirements of the Americans with Disabilities Act ("ADA") and the Texas Human Resources Code ("THRC") have no application to Barbri.  This, too, is misplaced and ignores well-settled law and Plaintiffs' well-plead allegations.  Both the ADA and the THRC explicitly apply to private entities that offer courses related to applications, licensing, certification, or credentialing for professional or trade purposes.  28 C.F.R. § 36.102(a); THRC § 121.011(a).  Barbri *admits* in its Answer to the Amended Complaint that it is such a private entity.  Dkt. No. 25 ("Def.'s Answer") at ¶ 81.  Yet, Barbri completely ignores this prong of the ADA and the THRC, instead focusing solely on whether Barbri is a place of public accommodation, a classification irrelevant to and separate from the "courses" prong of the ADA and THRC.  Even under the public accommodation analysis of the ADA and THRC, the allegations in Plaintiffs' Amended Complaint adequately state that Barbri is a place of public accommodation (at a minimum as both a place of education and a provider of services in lecture halls), and that there is a sufficient link between the inaccessible and discriminatory services Barbri provided to Plaintiffs and the places of public accommodations Barbri operates.

Barbri asks this Court to immunize it from liability for its failure to provide its services to Plaintiffs and the putative class of blind law school graduates around the nation in an accessible format. As explained more fully below, because Barbri's arguments ignore the allegations in the Amended Complaint and the applicable law, its motion should be denied.

## II.    STANDARD OF REVIEW

Defendant's standing arguments, including its mootness and ripeness arguments, are brought pursuant to Federal Rule of Civil Procedure 12(b)(1). When reviewing a motion to dismiss under Rule 12(b)(1), the court determines its power to hear the case. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981). Jurisdiction is only defeated if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle the plaintiff to relief," not by the mere possibility that claims might fail. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Williamson*, 645 F.2d at 415 (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)). The court is not limited to undisputed facts and may hear evidence on factual issues which determine jurisdiction. *Williamson*, 645 F.2d at 413. The court should consider Federal Rule 12(b)(1) motions before any other Rule 12 motions that attack the merits. *Ramming*, 281 F.3d at 161.

Defendant's remaining arguments are brought pursuant to Federal Rule of Civil Procedure 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court accepts the facts plead in the complaint as true and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). A motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel–Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992) (quoting *Ward v. Hudnell*, 366 F.2d 247, 249 (5th Cir. 1966)). A short and plain statement of the facts showing that the pleader is entitled to relief is sufficient under Federal Rule of Civil Procedure 8(a) as long as the pleading gives notice of the

claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Dismissal is inappropriate unless it is "beyond doubt that the plaintiffs would not be entitled to

recover under any set of facts that they could prove in support of the claims." *Tel–Phonic Services,*

*Inc*, 975 F.2d at 1137-38.  On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

the court may not consider allegations made outside the complaint. *Dorsey v. Portfolio Equities*,

*Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

## III.    ARGUMENT

### A. Plaintiffs Have Standing To Bring Their Claims

#### 1.        Plaintiffs' Claims Are Ripe

Defendant argues that Plaintiffs' claims were brought too early (*i.e.*, before such claims were

ripe) because two of the Plaintiffs had not yet fully begun a Barbri course at the time the initial

complaint was filed in April 2016. Dkt. No. 24, Def.'s Motion to Dismiss ("Def.'s Motion"), at 6.

This argument has no support and is contrary to well-established caselaw.

Plaintiffs need not have subjected themselves to Barbri's discriminatory treatment (in this case,

beginning the bar review course and experiencing the inaccessible online components of the course)

before filing their complaint.  Courts in this Circuit hold that a disabled individual suffers an

ongoing, cognizable injury if he is aware that an ADA-covered entity is inaccessible and he would

like to partake of the services of that entity. *See, e.g.*, *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d

570, 595 (S.D. Tex. 2014) (adopting "the deterrent effect doctrine in ruling that a disabled

individual suffers an ongoing, cognizable injury if he is deterred from visiting a noncompliant

accommodation because it violates the ADA"); *Betancourt v. Federated Dep't Stores*, 732 F. Supp.

2d 696, 709 (W.D. Tex. 2010) (asserting that "in an ADA Title III case, the risk of injury in fact is

not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff remains

disabled, and the plaintiff is 'able and ready' to visit the facility once it is made compliant"). The

Fifth Circuit has endorsed this way of establishing standing, holding that "a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the inaccessible object or place] affects his activities in some concrete way." *Hunter v. Branch Banking & Trust Co.,* No. 3:12-CV-2437-D, 2013 U.S. Dist. LEXIS 113102, at *8 (N.D. Tex. Aug. 12, 2013) (quoting *Frame v. City of Arlington*, 657 F.3d 215, 236 (5th Cir. 2011)).  "[A] plaintiff can establish standing by showing that she knows that the public accommodation is noncompliant and that she would visit that accommodation were it compliant." *Hunter,* 2013 U.S. Dist. LEXIS 113102, at *9 (citing *Scherr v. Marriott Int'l, Inc.,* 703 F.3d 1069, 1075 (7th Cir. 2013)).

All three Plaintiffs had knowledge of Barbri's inaccessible website and mobile application, as well as the accessibility problems that existed with the course materials, at the time this litigation was commenced. At the time of filing of this lawsuit, Plaintiff Stanley had been aware of the accessibility barriers she faced when she took the Summer 2015 course. FAC at ¶¶ 48, 49, 57, 58. Co-plaintiffs with Ms. Stanley, Derek Manners and Christopher Stewart were also aware of the accessibility barriers faced by Ms. Stanley and other blind students who took Barbri's bar review course at the time they filed the complaint, and they had reason to believe they would experience these same barriers.  *See* FAC ¶ 3; *see also* Declaration of Christopher Stewart, attached as Exhibit A to Appendix, at 2, ¶ 5; Declaration of Derek Manners, attached as Exhibit B to Appendix, at 5, ¶ 6.[1]  Significantly, all plaintiffs ultimately did experience these barriers when they took the Summer 2016 Barbri course.  FAC at ¶¶ 60-61.

---

[1] In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court may consider evidence outside the allegations of the complaint, including "the complaint supplemented by undisputed facts evidenced in the record."  *See Villas at Parkside Partners v. City of Farmers Branch*, 245 F.R.D. 551, 556-557 (N.D. Tex. 2007); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 173 (5th Cir. 1994) (affirming the district court's consideration of the allegations of the complaint and additional evidence including a declaration when reviewing a Rule 12(b)(1) motion for lack of subject matter jurisdiction).

Even if Defendant were correct (which, as explained above, it is not) that Plaintiffs needed to be participating in Barbri's course at the time of the filing of the complaint to satisfy ripeness requirements, the Fifth Circuit follows the general rule that an amended complaint serves as the operative pleading. An amended complaint supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985). The court should look to the most recent complaint on file as the live pleading to which the standing analysis is to be applied. *See Villas at Parkside Partners v. City of Farmers Branch,* 245 F.R.D. 551, 557 (N.D. Tex. 2007).

Defendant cites *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 458 (5th Cir. 2005) to argue that "[s]tanding is determined as of the commencement of the suit." Def.'s Motion at 7. However, in that case, the Court determined that Kitty Hawk had not "established that, at the time it filed its complaint, it had suffered any injury-in-fact, *or that there was a substantial likelihood that it would suffer an injury-in-fact in the future*, and the district court lacked jurisdiction over Kitty Hawk's complaint." *Kitty Hawk*, 418 F.3d at 460 (emphasis added). As discussed above, that is not the situation here, where the Plaintiffs anticipated accessibility barriers and, in fact, experienced those barriers.

Accordingly, Plaintiffs' First Amended Complaint is the operative pleading for purposes of Defendant's Motion to Dismiss. When Plaintiffs filed their First Amended Complaint, *they had started the Barbri course and had found Barbri's course materials to be inaccessible*. FAC ¶¶ 7, 12, 18, 48-49, 51, 53-5761, 62-64. Thus, at the time of filing the Amended Complaint, Plaintiffs had not only already suffered an injury-in-fact, but were likely to suffer future injuries as they continued with the Barbri course.

6

**2.      Plaintiffs' Claims Are Not Moot**

After arguing that Plaintiffs' claims are premature, Defendant incredibly claims that because the Barbri course which the three named Plaintiffs were taking at the time of the filing of their amended complaint has concluded, their claims are moot.  Def.'s Motion at 9-10.  According to Barbri's arguments, Plaintiffs could only pursue their claims if the entire lawsuit, including the pendency of the appeal, was completed within the three month period that a particular bar review course was being offered.  This would be an absurd result, and would render Plaintiffs' injury "capable of repetition, yet evading review."  *See Roe v. Wade*, 410 U.S. 113, 125 (1973). In *Roe*, the Supreme Court recognized that completion of a pregnancy does not render a pregnancy case moot because "[p]regnancy often comes more than once to the same woman" and "the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete." *Id.* The Barbri course that Plaintiffs enrolled in was only a quarter of the gestation period noted in *Roe*, much too small a window to reasonably expect the commencement and resolution of litigation. Thus, the Supreme Court's conclusion in *Roe* establishes that Plaintiffs' claims are appropriately before this Court and should not be deemed moot.

Additionally, the law is clear that Plaintiffs may continue their lawsuit even though they are not currently taking a bar review preparation course because they "… are likely to suffer the same injury again, [and] there is a continuing case or controversy that satisfies the requirements of Article III…." *Cruz v. Hauck*, 627 F.2d 710, 716 (5th Cir. 1980).  Plaintiffs maintain a personal interest in the outcome of this litigation even though the Summer 2016 bar review course has ended.  For example, Plaintiffs who fail their bar exams will have to repeat the bar review course and be confronted with the same accessibility barriers.  Plaintiff Stanley has already been forced to take Barbri's course twice, and, because she did not pass the Summer 2016 bar examination, she must consider whether to retake Barbri's course again.  FAC at ¶ 58; Declaration of Claire Stanley,

7

attached as Exhibit C to Appendix at 8, ¶ 4.  Even though Plaintiffs Manners and Stewart passed

their respective July 2016 bar examinations, they have expressed a need to take Barbri's bar review

course again when they move to different states in the foreseeable future.  Ex. B to Appendix

(Manners Decl.) at 5, ¶¶ 4-5; Ex. A to Appendix (Stewart Decl.) at 2, ¶ 4.

Furthermore, because this is a class action, it could continue even if Plaintiffs Stanley, Manners

and Stewart never took another bar review course, because the controversy about Barbri's

discriminatory policies and practices would continue with unnamed members of the class.  As the

*Cruz* court explained,

> [E]ven if the named plaintiffs themselves are not likely to suffer the same injury again,
> a class action "does not inexorably become moot by the intervening resolution of the
> controversy as to the named plaintiffs" if the class has been properly certified and the
> issue is "capable of repetition, yet evading review."  In such a case, there is a continuing
> case or controversy between the defendants and the unnamed members of the class
> "even though the claim(s) of the named plaintiff(s) (have) become moot."

*Cruz,* 627 F.2d at 716 (internal citations omitted) (recognizing inmates' claims concerning their

conditions of confinement were not moot even though the named plaintiffs were released from jail

before a class was certified). Because Plaintiffs maintain a personal interest in the controversy, and

because this is a putative class action, Plaintiffs' discrimination claims are not moot.  To hold

otherwise would mean that no Barbri student could ever enforce the ADA in court.

Barbri also wrongly claims that the relief sought by Plaintiffs is limited to the Summer 2016 bar

preparation course.  Def.'s Motion at 9-10.  Nowhere does the Amended Complaint include this

limitation.  Although the First Amended Complaint details the accessibility issues Plaintiffs

encountered while enrolled in Barbri's Summer 2016 bar preparation course, the declaratory and

injunctive relief sought are not limited to the Summer 2016 course.  FAC at ¶¶ 109-111.  In their

prayer for relief, Plaintiffs requested that this Court enjoin Barbri from violating the ADA and the

THRC; "Summer 2016" was never even mentioned in the relief requested.  Consequently, Plaintiffs claims for relief are not moot.

### 3. Plaintiffs Are Recognized Aggrieved Parties under the Texas Human Resources Code.

Defendant contends that Plaintiffs' state law claim is only viable for Texans physically located in Texas.  Def.'s Motion at 3-4.  Barbri is wrong.  The Texas Human Resources Code provides that, as a public facility, Barbri must make "reasonable accommodations in policies, practices, and procedures" for blind students.  THRC § 121.002.  Barbri's failure to "provide auxiliary aids and services necessary to allow the full use and enjoyment" of its services constitutes a deprivation of blind students' civil liberties.  THRC § 121.003.  The statute clearly states, "The person with a disability deprived of his or her civil liberties may maintain a cause of action for damages in a court of competent jurisdiction…."  THRC § 121.004(b).

Defendants seek to add a restriction – that the Texas statute is applicable only to Texans – that is not included in operative portions of the statute.  When asked to infer a similar limitation, the Supreme Court recently stated, "Given th[e] clear language, it would be improper to conclude that what Congress omitted from the statute is nevertheless within its scope."  *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).  Similarly, a Texas court followed the clear language of the statute, and noted that the provision "grants an aggrieved disabled individual a civil cause of action…" without inferring a limitation to Texas.  *Schraer v. Tex. Health & Human Servs. Comm'n*, No. 13-12-00702-cv, 2014 Tex. App. LEXIS 1569 at *10, 11 (Tex. App. Feb. 13, 2014).  This clear language of this provision does not limit recovery to Texans.

To support its argument that the statute only applies to Texans, Defendant focuses on the "vision" statement of the THRC about ensuring all Texans with disabilities will have opportunity and support.  Tex. Hum. Res. Code § 121.0014.  The vision statement, however, is a prefatory

clause that announces one of the purposes of the statute, but it does not limit or expand the scope of the operative clause, which establishes the right of a person with a disability (regardless of whether such person is a Texan) to bring a cause of action following the deprivation of his or her civil liberties.  In an analogous situation, the Supreme Court reviewed the Second Amendment and concluded that the operative clause codified the right of the people to keep and bear arms, then confirmed this intention with the prefatory clause, which stated a "well regulated [m]ilitia [is] necessary to the security of a free [s]tate." *Dist. Of Columbia v. Heller*, 554 U.S. 570, 577-78 (2008).  According to the *Heller* court, "a prefatory clause does not limit or expand the scope of the operative clause." *Id.* at 578.  Here, the State of Texas recognized a right of all persons with disabilities to recover for the deprivation of their civil liberties, an action consistent with its purpose of ensuring opportunity and support for Texans.

   Following Defendant's logic, if a public facility had a sign in front allowing access to the facility only to Texans who use wheelchairs (but prohibiting access to non-Texans who use wheelchairs), the facility's policy would be in compliance with Texas law.  Acceptance of this argument would yield absurd results, an effect that is unnecessary because the statute clearly conveys the right to sue to persons with disabilities whose civil liberties have been deprived without regard to the state citizenship of the aggrieved person.  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts -- at least where the disposition is required by the text is not absurd -- is to enforce it according to its terms." (internal citations omitted)).

   Moreover, Barbri itself required all website users to agree to a choice of law clause that specifically chose Texas law as the applicable state law and a choice-of-forum clause making Dallas, Texas the only available forum:

These Terms and Conditions shall be governed by and construed in accordance with the laws of the State of Texas, without reference to any conflict of law principles. Further, any such claim or cause of action shall be brought exclusively in the state or federal courts located in Dallas, Dallas County, Texas, and you agree to submit to the exclusive personal jurisdiction of such courts and hereby appoint the Secretary of State of Texas as your agent for service of process. You agree to waive any objection that the state or federal courts of Dallas County, Texas, are an inconvenient forum.[2]

Barbri crafted the choice-of-law provision without input from the Plaintiffs, yet seeks to avoid the effects of this provision.  Similarly, the choice-of-law provision for all Barbri applicants reads:

All matters arising out of or relating to this application are governed by and construed in accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than those of the State of Texas.[3]

The Fifth Circuit has characterized as "broad" those clauses that, as here, select a particular state's law to "govern" and "construe" "all matters" related to a transaction.  *Caton v. Leach Corp*., 896 F.2d 939, 943 n.3 (5th Cir. 1990). The breadth of this clause evidences Barbri's intent to be bound by Texas laws.  Furthermore, because the clause explicitly prohibits "the application of the laws of jurisdiction other than those of the State of Texas," Defendant's argument would leave Plaintiffs without any state law remedy for their claims.

    Barbri cannot avoid the effects of its broad choice of law provisions.  When parties have selected law that would be applied to an issue by including a provision in the agreement, the laws of the state chosen by the parties will be applied.  Restat. 2d. of Conflict of Laws § 187 (2nd 1988). The parties intended to apply Texas law to this dispute when they entered into a contract; Barbri cannot retroactively dispute and unilaterally walk away from this decision.[4]

---

[2] Terms of Use, BARBRI (Aug. 24, 2015), www.barbri.com/terms-of-use/ (last visited Nov. 2, 2016).

[3] *See* Exhibit D to Appendix at 11-12 (Barbri's Enrollment Application, BARBRI (Aug. 24, 2015)).

[4] Moreover, application of Texas law would be imminently fair and reasonable given that Barbri is headquartered in Texas.  *See , e.g.*,  *Anderson v. Dassault Falcon Jet Corp*., Case No. 1:01-CV-640, 2003 U.S. Dist. LEXIS 17843 (W.D. Mich Sept. 30, 2003) (applying law of the state where

**B.** **The Complaint Adequately Alleges That Barbri's Services Are Covered by the Accessibility Requirements of the ADA and Texas Human Resources Code**

Title III of the ADA and Section 121 of the Texas Human Resources Code prohibit various categories of entities from discriminating on the basis of disability.  These categories include: 1) private entities that offer courses related to licensing for professional purposes, and 2) places of public accommodation.  28 C.F.R. § 36.102(a); THRC §§ 121.011 & 121.002(5).  Plaintiffs adequately allege that Barbri falls within both of these categories and that the services provided by Barbri are impermissibly inaccessible to blind students.  Defendant disputes that Plaintiffs have adequately alleged that Barbri's inaccessible services are governed by the "place of public accommodation" prong of the ADA (*see* Def.'s Motion at 10-20), but *admits* that it is a private entity that offers a course related to licensing for professional purposes.  Def.'s Answer at ¶ 81.  As described below, this admission conclusively brings Barbri and its course offerings within the purview of the accessibility requirements of the ADA.  Additionally, Plaintiffs further describe below why, even apart from Barbri's identity as a private entity offering ADA-covered courses, it is a place of public accommodation under the ADA, and a public facility under the THRC, whose services are also required to be accessible to Plaintiffs and the putative class.

> **1.** **Barbri is A Private Entity Offering a Course Related to Licensing for Professional Purposes, and, Accordingly, Is Covered by the ADA and Texas Human Resources Code.**

The ADA's prohibition on discrimination on the basis of disability applies to

> any public accommodation; public facility; *or private entity that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional or trade purposes.*

---

Defendant is headquartered "because a corporation's headquarters is usually the place where important decisions affecting corporate conduct are made"); *Kelly v. Ford Motor Co*., 933 F. Supp. 465, 469 (E.D. Pa. 1996) (stating that in a choice of law analysis, emphasis should be placed on a corporation's principal place of business); *see also Budge v. Post*, 643 F.2d 372, 374 n.1 (5th Cir. 1981) (stating that a federal court located in Texas applies Texas choice-of-law rules, which fully respect contractual provisions choosing Texas law).

28 C.F.R 36.102(a) (emphasis added).  Like the ADA, the Texas Human Resources Code applies to

> A private entity that offers an examination or a course related to applications, certification, credentialing, or licensing for secondary or postsecondary education, a profession or trade.

Tex. Hum. Res. Code § 121.011(a).

The Amended Complaint alleges Babri is a covered private entity providing courses, *see* FAC ¶¶ 99-108, and Defendant *admits* that Barbri is "a private entity which offers a course related to licensing for professional purposes."  Def.'s Answer at ¶ 81.  As such, it is indisputable that Barbri's bar review course is covered by the ADA and the Texas Human Resources Code.  Nowhere in Barbri's motion to dismiss does it try to argue that this provision of the ADA or THRC does not apply to it.  Instead, Barbri focuses exclusively on whether its services are covered by the place-of-public-accommodation requirements, which is a separate category under both the ADA and the Texas Human Resources Code.  *See Ramos v. Uber Techs., Inc.*, No. SA-14-CA-502-XR, 2015 U.S. Dist. LEXIS 20914, at *13-14 (W.D. Tex. Feb. 20, 2015) ("Similarly, section 12189 also requires 'any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education,  professional, or trade purposes' to make them accessible and is not limited to public accommodations. [Defendant's] restrictive reading of Title III as governing only public accommodations is contrary to its structure and its plain language.").

Because the Barbri-offered bar review course is covered by the ADA, Barbri must "make modifications . . . to ensure that the place and manner in which the course is given are accessible to individuals with disabilities."  28 C.F.R. § 309(c)(1).  Additionally, Barbri must "provide auxiliary aids and services for persons with impaired sensory, manual, or speaking skills, unless… the aid or service would fundamentally alter the course or would result in an undue burden."   28 C.F.R. § 309(c)(3).

The Amended Complaint contains clear and detailed allegations that Barbri does not offer the bar review course in a manner that is accessible to blind and low vision students.  Barriers to Barbri's website and mobile application prevent Plaintiffs from fully accessing various features of the course, such as the personal study planner, online lectures, online rankings, question sets, Essay Architect, and various other online components.  FAC at ¶ 41, 48, 49, 51, 53-57, 61.  This is not Barbri's first encounter with this exact issue.  In 1994, Barbri entered into a consent decree with the U.S. Department of Justice related to accessibility of its course materials for blind students.  *See U.S. v. Harcourt Brace Legal & Prof'l Publ., Inc.,* 94-cv-3295, 1994 U.S. Dist LEXIS 22007 (N.D. Ill Jun. 23, 1994) (Consent Order to resolve ADA litigation in which Barbri's predecessor was found to be a place of public accommodation).  In this Consent Order, Barbri further acknowledged that its course was covered by the accessibility requirement of the ADA.  *See id.*  Thus, Plaintiffs have adequately alleged actionable claims under the private-entity-offering-courses provisions of the ADA and THRC, and Defendant has not refuted these allegations.

### 2.      Barbri is a Place of Public Accommodation under the ADA.

Separate from Barbri's status as a private entity offering courses, Barbri's course is covered by the ADA's accessibility requirements because Barbri's course is a service or good of a place of public accommodation. *See Harcourt*, 1994 U.S. Dist LEXIS 22007 (Consent Order to resolve ADA litigation in which Barbri's predecessor was found to be a place of public accommodation).

The conclusions in the Consent Order are consistent with the ADA, which enumerates twelve categories of private entities that are considered "public accommodations."  42 U.S.C. § 12181(7). These categories include a "place of education" and "lecture halls."  42 U.S.C. § 12181(7)(j) & (d); FAC at ¶ 85.  Barbri meets the definition of both of these categories.  Barbri owns and operates a "place of education" because, through lectures and course materials, Barbri teaches classes on subjects covered on the bar exam.  FAC at ¶¶ 26, 38, 44, 88.  Additionally, Barbri's bar review

14

course includes assignments, practice questions, and graded practice tests and essays.  FAC at ¶¶ 14, 36, 37, 40, 44, 89.  Barbri also is a place of accommodation under the ADA because it operates "lecture halls."  42 U.S.C. § 12181(7)(d).  By its own admission,

> Defendant Barbri leases and/or owns lecture halls and offices around the country in which it offers its in-person lectures, either live or by video, and owns and operates its web site and mobile application.

Def.'s Answer. ¶ 70; FAC ¶ 87.

### a. Barbri's Use of Websites and Applications Does Not Change the Place of Public Accommodation Analysis

At its core, Defendant's Motion argues that the ADA's requirements for public accommodations apply only to "access to a physical place of public accommodation." Def.'s Motion at 6. This narrow reading of the ADA is unsupportable. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the …services…of any place of public accommodation by any person who owns, leases…, or operates a place of public accommodation." 42 U.S.C. § 12182(a). Thus, the clear language of the ADA establishes that the statute applies not only to physical access of places of public accommodation, but also to the "services of" places of public accommodation.

This reading of the ADA is supported by case law in Circuits across the country. *See, e.g.*, *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 954 (N.D. Cal. 2006) ("It is clear that the purpose of the statute is broader than mere physical access—seeking to bar actions or omissions which impair a disabled person's 'full enjoyment' of services or goods 'of' a covered accommodation."); *Pallozzi v. Allstate Life Insurance Co.* 198 F.3d 28, 33 (2d Cir. 1999) ("The term 'of' generally does not mean 'in,' and there is no indication that Congress intended to employ the term in such an unorthodox manner.").

In *Target*, the court emphasized the importance of a denial of equal participation under the ADA: "the statute expressly states that the denial of equal 'participation' or the provision of 'separate benefit[s]' are actionable under Title III." *Target*, 452 F. Supp. 2d at 954. The opinion stressed the Congressional intent behind the ADA, noting: "Although the Ninth Circuit has determined that a place of public accommodation is a physical space, the court finds unconvincing defendant's attempt to bootstrap the definition of accessibility to this determination, effectively reading out of the ADA the broader provisions enacted by Congress." *Id.*  Similarly, the Second Circuit in *Pallozzi* warned against restricting the ADA to physical spaces, emphasizing Title III's mandate regarding the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ," and rejected Allstate's contention that, because insurance policies are not used in places of public accommodation, they do not qualify as goods or services "of a place of public accommodation." *Pallozzi*, 198 F.3d at 33.

The rationale behind these decisions applies with equal force to Barbri.  Because the ADA covers the services "of" (not "in") a public accommodation, *id.*, it does not matter how or where a student of Barbri accesses its services (*i.e.*, via website or mobile app), so long as those services are *services of* a public accommodation, which Barbri admittedly is.  And, Plaintiffs specifically plead violations of Title III of the ADA based on Defendant's failure to provide accessible services. Specifically, Plaintiffs allege in their First Amended Complaint that they have been denied access to full and equal enjoyment of Barbri's goods and services, namely Barbri's online course materials and components.  FAC at ¶¶ 41, 48, 49, 51, 53-57, 61, 91.  In order to receive the full benefit and enjoyment of the Barbri lectures, both in-person at lecture halls or online, students are required to, and are instructed to, use components of Barbri's online course material, including using course outlines, taking and submitting on-line practice tests, answering online question sets, submitting

essays, following the online personal study plan for assignments, and receiving personalized assignments based on an individual's online practice.  FAC at ¶ 89.

Any disagreement Barbri may have with these well-plead allegations is appropriately the subject of a factual dispute and should not be considered on a motion to dismiss.  *Morgan v. Swanson*, 659 F.3d 359, 420 n.36 (5th Cir. 2011) ("On a motion to dismiss, we do not have the power to resolve factual disputes.").

> **b.** **Title III Requires Public Accommodations to Provide Appropriate Auxiliary Aids and Services for Effective Communication, which Include Screen Reader Software and Accessible Electronic and Information Technology.**

In its Motion to Dismiss, Defendant ignores its obligation as a public accommodation under Title III of the ADA to provide auxiliary aids or services to ensure that no individual with a disability is denied services or treated differently from other individuals because of the absence of auxiliary aids and services, unless providing auxiliary aids or services would result in an undue burden.  28 C.F.R. § 36.303(a).  This requirement is essentially identical to the mandate on private entities offering a course related to licensing for professional purposes to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities."  28 C.F.R. § 309(c)(1).  "Auxiliary aids and services" include screen reader software and accessible electronic and information technology, or other effective methods of making visually delivered materials available to individuals who are blind or have low vision. 28 C.F.R. § 36.303(b)(2).[5]

---

[5] The DOJ has also confirmed that effective communication applies to websites, and that has been the Department's position for more than twenty years: "Covered entities [under the ADA] that use the internet for communications regarding their programs, goods, or services must be prepared to offer those communications through accessible means as well."  Letter from Deval L. Patrick, Assistant Attorney General, to Senator Tom Harkin (Sept. 9, 1996), (Oct. 31, 2016, 5:20 PM), http://www.justice.gov/crt/foia/readingroom/frequent_requests/ada_tal/tal712.txt.

In a statement on its website, Barbri claims to "provide appropriate auxiliary aids and services to students with disabilities to ensure effective communication." FAC at ¶ 42. These auxiliary aids and services include the formatting, coding, and tagging of Barbri's course materials, website, and mobile application that is necessary for screen reader software to read and access the content. FAC at ¶ 29, 97. However, the auxiliary aids and services provided by Barbri are insufficient, as they do not ensure equivalent effective communication with its blind students and sighted students. FAC at ¶¶ 43, 98. Moreover, the Amended Complaint alleges that Barbri consistently failed to format course materials properly in an accessible and timely manner, and to code all features on its website and mobile application to be accessible to blind students. FAC at ¶¶ 29, 41, 48, 49, 51, 53-57, 61, 94. As a result, blind students could not fully prepare for the bar exam like sighted students and lacked the depth of critical review and resources that were available to sighted students. FAC at ¶¶ 54, 56, 62, 89-91, 94. To the extent that Barbri disagrees with Plaintiffs' allegations and believes it has provided sufficient aids and services to ensure equivalent and effective communication, that raises an issue of fact, which cannot be resolved in a Motion to Dismiss under Rule 12(b)(6). *Morgan v. Swanson*, 659 F.3d 359, 420 n.36 (5th Cir. 2011).

Defendant also wrongly suggests that there are insufficient regulations promulgated by the Department of Justice to justify a requirement that they make their bar review course accessible to blind students. Def's. Motion at ¶ 23, 25-27. Such contention is baseless. Although Defendant Barbri correctly states that the Department of Justice ("DOJ") is promulgating ADA guideline regulations for web information, Def's. Motion at ¶ 25, the DOJ has been very clear that "[t]he fact that the regulatory process is pending does not support [the] claim that [sic] online programming is not currently covered by title III requirements." Statement of Interest of the United States of America at 10, *Nat'l Assoc. of the Deaf v. Mass. Inst. of Tech*., Civil Action No. 3:15-cv-300024-MGM, (D. Mass.) *available at* https://www.ada.gov/briefs/mit_soi.pdf. According to DOJ, access

to websites is not specifically addressed in the ADA or its regulations because the Internet did not exist when the ADA was enacted.  75 Fed Reg. 43,460, 463.  In a notice of proposed rulemaking to establish requirements for web accessibility, the DOJ unequivocally stated:  "the [ADA's] broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on Websites over the Internet."  *Id.*  Courts similarly have required web accessibility under the ADA in the absence of guideline regulations.  *See Nat'l Assoc. of the Deaf v. Netflix*, 869 F. Supp. 2d 196, 200 (D. Mass 2012) (excluding web sites would "run afoul" of the purposes of the ADA and Congress's intent that individuals with disabilities fully enjoy services available indiscriminately to the general public); *see also* Report and Recommendation Regarding Defendant's Motion to Stay or Dismiss at 23, *Nat'l Assoc. of the Deaf* v. *Harvard Univ.*, Civil Action No. 3:15-cv-300024-MGM, 2016 U.S. Dist. LEXIS 120121 (D. Mass. Feb. 9, 2016) (rejecting the argument that absence of website accessibility requirements in the ADA accessibility guidelines means there are no website accessibility requirements under the ADA).

As importantly, there already exist more than sufficient regulations covering the types of auxiliary aids and services required here.  *See* 28 C.F.R. §§ 36.303(b)(2) (noting "screen reader software" and "accessible electronic and information technology" as examples of the types of aids and services required).  Accordingly, sufficient regulation already exists to require Barbri to make its bar-review course accessible.

### c.     Plaintiffs Are Not Requesting Relief under the ADA that would Require Defendant to Modify the Content of its Bar Review Materials.

Defendant further argues that Plaintiffs seek to have it alter the content of its bar review materials, which is not required under the ADA.  Def.'s Motion at 17-18.  In support of this argument, Defendant relies on *McNeil v. Time Ins. Co.,* 205 F.3d 179, 188 (5th Cir. 2000).  However, this case does not support Defendant's argument, because it involves challenging the

substantive content of an already-issued insurance policy (to cover AIDS more fully).  Indeed, it carefully distinguishes between goods and services "that the business normally offers," which are not regulated by the ADA, and "access to" or "full enjoyment of" those goods and services, which cannot be denied under the ADA. *McNeil*, 205 F.3d at 186-187. Plaintiffs here do not seek to change the content of Defendant's bar review course.  They seek only access to the same material that is available to sighted students. FAC ¶¶ 32, 91, 98, 110.  This relief is appropriate under the ADA.  28 C.F.R. §§ 36.303 & 36.309(c)(1).[6]

    **d.**    **Plaintiffs Have Established a Strong Nexus between Barbri's Website, Mobile Application, and Physical Place of Public Accommodation.**

  Barbri's Motion to Dismiss urges the Court to adopt the holdings articulated by courts in the Ninth, Sixth, Third and Eleventh Circuits that places of public accommodation are not subject to regulation by the ADA unless there is a sufficient nexus between the discrimination alleged and a physical place of public accommodation.  *See* Def.'s Motion at 11 (citing *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000); *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 956 (N.D. Cal. 2006); *Access Now v. Sw. Airlines*, 227 F. Supp. 2d 1312 (S.D. Fla. 2002); *Cullen v. Netflix, Inc.*, 600 F. App'x 508 (9th Cir. 2015); *Parker v. Metro Life Ins. Co.,* 121 F. 3d 1006, 1011 (6th Cir. 1997); *Ford v. Schering-Plough Corp.,* 145 F. 3d 601, 613 (3d Cir. 1998); *Rendon v. Valleycrest Prods.*, 294 F.3d 1279 (11th Cir. 2002)). Barbri acknowledges that the Fifth Circuit has not opined on this issue, and notes that other Circuits do not require this nexus showing. Def.'s Motion at 11-16. However, even if the nexus requirement is applied here, Plaintiffs have alleged ample facts to demonstrate a connection between the discrimination involved and Barbri's physical locations, including its lecture halls.

---

[6] And, again, to the extent Barbri believes that the requested accommodations would alter its goods and services, such belief has no bearing at the motion-to-dismiss stage of a case.  *Morgan v. Swanson*, 659 F.3d 359, 420 n.36 (5th Cir. 2011).

Plaintiffs allege in their Amended Complaint that Barbri leases halls to host lectures, during which students were often referred to Barbri's online study tools, including submitting answers online to practice tests for completed lectures, receiving personal assignments based on individual test results, and adhering to Barbri's online planner for daily assignments related to lectures, all of which were inaccessible to Plaintiffs.  FAC at ¶ 49, 87, 89.  Plaintiffs also allege that during lectures students were required to complete handouts that were on Barbri's mobile application, which was not fully accessible, and that when Barbri provided handouts in an alternative format to Plaintiffs, they often were not provided until well after the lectures in which they were to be used. FAC at ¶ 51, 61.  Because of these accessibility issues, Plaintiffs could not take full and equal advantage of the lectures in Barbri's place of public accommodation, as required by the ADA. FAC ¶¶ 89, 91.  Thus, Plaintiffs have established a direct link between Barbri's lecture halls and Plaintiffs' alleged discrimination.

Of the decisions cited by Defendant, *Target*, 452 F. Supp. 2d at 955, is the most pertinent to this case.[7]  Specifically, the Court in *Target* concluded that if a website's inaccessibility impedes full and equal enjoyment of goods and services offered at the physical facility, the ADA applies. *Id.* at 956. Here, because Plaintiffs and other blind students could not access Barbri's online tools related to its lectures, they were placed at a significant disadvantage compared to their sighted counterparts

---

[7] The other decisions cited by Defendant on page 12 of its Motion are not helpful to Defendant's nexus argument. Three of the decisions (*Weyer*, *Ford*, and *Parker*) involve ADA claims made against insurance companies for allegedly discriminatory policies offered by the plaintiffs' employers, where the courts concluded *inter alia* that there was no relationship between the plaintiffs and the defendant insurance companies on which to base ADA Title III claims. Two of the decisions (*Access Now* and *Cullen*) involve ADA actions against companies that had no physical presence at all. The last decision, *Rendon*, does not rely on a nexus analysis and supports the argument by Plaintiffs in this case that Title III of the ADA is applicable both to tangible (physical) barriers and intangible barrriers, such as discriminatory policies, that restrict a disabled person's ability to enjoy an entity's goods, services and privileges. The *Rendon* court further held that the ADA does not require that the discriminatory actions occur on site to offend the ADA. 294 F. 3d 1279, at para. 16.

and were denied full and equal enjoyment of the lectures offered at Barbri's lecture halls. Thus, just as in *Target*, Plaintiffs have established a connection between the alleged discrimination and a physical facility. This is in stark contrast to the one Texas district court case Defendant cites for the proposition that the ADA does not prohibit discrimination that is unrelated to "physical" places. Def.'s Motion at 16.   In that case, *Chapman v. PacifiCare of Texas*, H-02-2188, 2002 U.S. Dist. LEXIS 27926 (S.D. Tex. Aug. 21, 2002), much like the insurance cases discussed in footnote 7, there were no allegations that "raise[d] an inference of a nexus between [the discriminatory acts] and goods, services, facilities, privileges, advantages, or accommodations offered by a place of public accommodation owned, operated, or leased by [the defendant]." *Id.* at *7.[8]

Moreover, as a "place of education" Barbri cannot, and does not, deny that the course materials that Plaintiffs allege to be inaccessible have a nexus to that place of education.  Indeed, the course materials are Barbri's *raison d'etre*, without which it would have no reason or purpose to exist.  To claim that there is not a sufficient nexus between the accessibility of these materials and the place of public accommodation is nonsensical.[9]

> ### e.   Barbri's Website and Mobile Application Are Covered by the ADA Because Cyberspace is A Place of Public Accommodation.

As described above, and conceded to by Barbri, there is a split among the Circuits as to whether the inaccessible services of a place of public accommodation must have a nexus with a physical

---

[8] Also, Barbri is wrong that *Chapman* required a "physical" place.  Nowhere does the *Chapman* court hold that the place of public accommodation need be a "physical" place.  *See id.*

[9] There is another nexus between the allegations in the Complaint and Barbri's physical locations. Barbri's argument that the ADA "only regulate[s] conduct with a connection to physical space[s]," is largely based on the use of the word "facility" in the definition of a "place of public accommodation." Def.'s Motion at 5. What Barbri ignores, however, is that "facility" is defined to include "…equipment…or other…personal property." 28 C.F.R. § 36.104. Barbri's servers are inarguably "equipment," as well as "personal property," and they are directly tied to the website and apps that Plaintiffs allege are inaccessible and in violation of the ADA. *Specht v. Netscape Comm. Corp.*, 306 F.3d 17, 36 n. 19 (2nd Cir. 2002) ("computer equipment, bandwidth, and server capacity are examples of "traditional personal property"); FAC at ¶¶ 28, 33-34, 36-38, 40.

location in order for the ADA's accessibility requirements to apply, and the Fifth Circuit has not yet spoken on this issue.  Def.'s Motion at 11-16.  Although the Court need not reach this issue here given the facts that: 1) as described above, Barbri's courses are covered by the ADA and THRC under the "courses and examinations" prong, and 2) the Amended Complaint is replete with allegations providing ample support for there being a nexus between the allegedly inaccessible services and Barbri's place of public accommodation, it would be reasonable for this Court to follow the decisions of the Seventh, First and Second Circuits, which have held that the ADA covers discrimination by entities that qualify as public accommodations regardless of whether the discrimination bears any nexus to a physical location.  *See Carparts Distrib. Ctr. v. Auto. Wholesaler's Ass'n*, 37 F.3d 12 (1st Cir. 1994); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir. 1999); *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. Mar. 19, 2015).

Congress unequivocally intended that the ADA's broad mandate for providing access to public accommodations apply to emerging technologies such as online courses offered by Barbri. "[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times." H.R. Conf. Rep. 101-485 (II) at 108, reprinted in 1990 U.S.C.C.A.N. at 391 (cited in *Netflix*, 869 F. Supp. 2d at 200-01). Unquestionably, new technologies (such as Barbri's website and mobile applications) would be subject to the ADA: "technological advances can be expected to further enhance options for making meaningful and effective opportunities available to individuals with disabilities." *Id.*  Congress specifically identified "[i]nformation exchange" – which Barbri offers – as an area where expanding technology would be subject to the ADA. *Id.*; *see also* H.R. Conf. Rep. No. 101-596 at 67-68 (1990), reprinted in 1990 U.S.C.C.A.N. 565, 576-77 (recognizing that "[i]n the future, new technology, such as speech-to-text services, may require other forms of direct access" to 911 emergency services for the deaf).

Additionally, the legislative history of the definition of "public accommodation" shows that Congress wanted the list of 12 exemplars in the definition to be "construed liberally" in harmony with the ADA's broad purpose. S. Rep. No. 101-116, 59 (1990). ("[W]ithin each of these categories, the legislation only lists a few examples and then, in most cases, adds the phrase 'other similar' entities. The Committee intends that the 'other similar' terminology should be construed liberally, consistent with the intent of the legislation . . . ."); see also H.R. Rep. 101-485 (III) at 54, reprinted in 1990 U.S.C.C.A.N. at 477 (same). The law's breadth is evident in Congress's agreement with the Attorney General's view that the definition "must bring Americans with disabilities into the mainstream of society 'in other words, full participation in and access to all aspects of society.'" H.R. Rep. 101-485 (II) at 36, reprinted in 1990 U.S.C.C.A.N. at 317 (internal citation omitted). Thus, the services Barbri provides are readily classified in the categories of services listed in the ADA's definition of "public accommodation," particularly as "place of education" is an explicitly enumerated category under the ADA's definition of "public accommodation."   The current statute provides all the authority necessary to hold Barbri accountable.

### 3.      Barbri is a Public Facility under the Texas Human Resources Code.

Defendant correctly notes that the definition of "public facility" under the Texas Human Resources Code is not identical to the definition of a "public accommodation" under the ADA. Def.'s Motion at 9.  In fact, "public facility" is defined more broadly.  A "public facility" in Texas includes " . . . any place of public accommodation, amusement, convenience, or resort to which the general public or any classification of person from the general public is regularly, normally, or customarily invited."  THRC § 121.002(5).  Since the definition of "public facility" includes "any place of public accommodation," Barbri is also a "public facility" under the Texas Human Resources Code for the same reasons it is a place of public accommodation under the ADA.

24

Defendant cites to *Dabney v. Highland Park Indep. Sch. Dist*., Civil Action No. 3:15-CV-2122-L, 2016 U.S. Dist. LEXIS 44302, at *13-14 (N.D. Tex. Mar. 31, 2016) for the misplaced proposition that the THRC can only apply to "admission and access to physical public facilities." Def.'s Motion. at 6.  However, the court in *Dabney* admittedly only examined two of the types of discrimination prohibited by the THRC, namely Tex. Hum. Res. Code § 121.003(a), which provides that "[p]ersons with disabilities have the same right as persons without disabilities to the full use and enjoyment of any public facility in the state," and Tex. Hum. Res. Code § 121.003(c), which provides that "[n]o person with a disability may be denied admittance to any public facility in the state because of the person's disability."  *Dabney*, 2016 U.S. Dist. LEXIS 44302, at *13-14.  *Dabney* did not analyze or determine the applicability of the THRC to the forms of discrimination alleged here – failure to offer a course in a manner that is accessible to persons with disabilities or failure to provide auxiliary aids and services necessary to allow the full use and enjoyment of a public facility.  Both of these forms of discrimination are barred by the THRC under provisions wholly apart from those applied in *Dabney, see* Tex. Hum. Res. Code §§ 121.003(d)(3) and 121.011, and neither of these forms of prohibited discrimination require a plaintiff to demonstrate that "access" to a "physical public facility" was denied.  Indeed, the Fifth Circuit Court of Appeals has specifically found that the THRC can apply to barriers to accessibility that have nothing to do with physical access.  *See Perez v. Doctors Hosp. at Renaissance, Ltd*., 624 Fed.Appx. 180, 186 (5th Cir. 2015) (finding that a failure of a hospital to provide interpretation services could be a violation of the THRC); *see also Badgley v. Law Sch. Admission Council, Inc.*, 4:99cv-0103-M, 2000 U.S. Dist. LEXIS 16925 (N.D. Tex. Aug. 24, 2000) (allowing THRC claims to proceed despite no allegations of barriers to physical access).

## IV.   CONCLUSION

For the reasons described above, Plaintiffs respectfully request that Defendant's motion to dismiss the amended complaint be denied.

Dated: November 3, 2016

Respectfully submitted,

 /s/ *Matthew K. Handley*
Matthew K. Handley (admitted *pro hac vice*)
Deepinder K. Goraya (admitted *pro hac vice*)
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, NW, Suite 400
Washington, DC 20036
(202) 319-1000 (phone)
(202) 219-1010 (fax)
matthew_handley@washlaw.org
deepa_goraya@washlaw.org

*COUNSEL FOR ALL PLAINTIFFS*

Wayne Krause Yang
State Bar No. 24032644
Abigail Frank
State Bar No. 24069732
Hani Mirza
State Bar No. 24083512
TEXAS CIVIL RIGHTS PROJECT
501 Elm Street, Ste. #450
Dallas, Texas 75202
(972) 333-9200 (phone)
(512) 474-0726 (fax)

*COUNSEL FOR INDIVIDUAL PLAINTIFFS*