# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| CLAIRE STANLEY, DEREK MANNERS, and CHRISTOPHER STEWART, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| *v.* | ) ) |
| | ) |
| BARBRI INC., AKA BARBRI BAR REVIEW, | ) ) |
| *Defendant.* | ) ) |

Judge Renee H. Toliver

Civil Action No. 16-cv-01113-BK

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION AND APOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

# Table of Contents

I.    INTRODUCTION ...................................................................................................................1

II.    STATEMENT OF FACTS ....................................................................................................2

III.   REQUIREMENTS OF THE ADA AND THE THRC ...................................................8

IV.   ARGUMENT ..........................................................................................................................8

   A.   Legal Standards for Class Certification ................................................................9

   B.   The Class Satisfies the Requirements of Rule 23(a). ..........................................10

      1.   The Class Meets the Numerosity Requirement of Rule 23(a)(1). ...............10

         a.   Number of Class Members ....................................................................11

         b.   Geographic Dispersion of the Class .....................................................11

         c.   Ease of Class Member Identification ...................................................12

         d.   Nature of the Case ..................................................................................12

      2.   The Class Meets the Commonality Requirement of Rule 23(a)(2). ............12

      3.   The Class Meets the Typicality Requirement of Rule 23(a)(3). ..................14

      4.   The Class Meets the Adequacy Requirements of Rule 23(a)(4). ................16

         a.   The Plaintiffs Will Adequately Represent the Class. ..........................16

         b.   Plaintiffs' Counsel Will Adequately Represent the Class. ..................17

      5.   The Class is Ascertainable. ............................................................................18

   C.   The Class Satisfies the Requirements of Rule 23(b) ...........................................19

      1.   The Injunctive Relief Sought by the Class Satisfies Rule 23(b)(2). ..........19

      2.   The Class Satisfies Rule 23(b)(3). ................................................................21

         a.   Common Questions Predominate over Individual Questions. ..............22

         b.   A Class Action Is Superior to Holding Multiple Trials. ......................24

V.    CONCLUSION .....................................................................................................................25

# TABLE OF AUTHORITIES

Cases

*Access Now, Inc. v. Ambulatory Surgery Ctr. Grp., Ltd.* 197 F.R.D. 522 (S.D. Fla. 2000) ......... 10

*Amchem Prods.*, 521 U.S. at 614 ............................................................................ 10, 16, 21, 25

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (U.S. 2013) .................. 23

*Billitteri v. Sec. Am., Inc.*, No. 3:11-cv-00191-F, 2011 U.S. Dist. LEXIS 92713 (N.D. Tex. Aug. 4, 2011) ........................................................................................................................ 23

*Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205 (10th Cir. 2014) ....... 10

*Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125 (5th Cir. 2005) ..................................................... 17

*Frey v. First Nat'l Bank Sw.*, 602 Fed. Appx. 164 (5th Cir. 2015) .............................................. 19

*Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980) ......................................................................... 11

*In re Deepwater Horizon (Deepwater Horizon II)*, 739 F.3d 790, 821 (5th Cir. 2014) ..... 9, 13, 18

*Int'l Brotherhood of Teamsters v. United States (Teamsters)*, 431 U.S. 324 (1977) .............. 15, 24

*James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001) ................................................................ 15

*Jenkins v. Raymark Indus.*, 782 F.2d 468 (5th Cir. 1986) ........................................................... 15

*Jones v. Diamond*, 519 F.2d 1090 (5th Cir. 1975) ..................................................................... 10

*Klein v. O'Neal*, 222 F.R.D. 564 (N.D. Tex. 2004) ................................................................... 23

*Lucas v. Kmart Corp.*, No. 99-cv-01923-JLK, 2005 WL 1648182 (D. Colo. July 13, 2015) ...... 10

*M.D. v. Perry*, 675 F.3d 832 (5th Cir. 2012) ............................................................................ 20

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004) ................................................... 10

*Morrow v. Washington*, 277 F.R.D. 172 (E.D. Tex. 2011) .................................................... 20, 21

*Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620 (5th Cir. 1999) ........................... 9, 12, 13

*Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185 (N.D. Cal. 2007) ...................... 10

*Park v. Ralph's Grocery Co.*, 254 F.R.D. 112 (C.D. Cal. 2008) ................................................. 10

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ...................................................... 25

*Scott v. Clarke*, 61 F. Supp. 3d 569 (W.D. Va. 2014) .................................................... 18

*Scott v. Fin. Servs.*, 277 F.R.D. 316 (N.D. Tex. 2011) .................................................. 15

*Seeligson v. Devon Energy Prod. Co.*, No. 3:16-CV-00082-K, 2017 U.S. Dist. LEXIS 2458 (N.D. Tex. Jan. 6, 2017) ........................................................................................ 19

*Thomas v. Christopher*, 169 F.R.D. 224 (D.D.C. 1996) ................................................ 18

*Tyson foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2015) .............................................. 22

*U.S. v. Harcourt Brace Legal Prof'l. Publ., Inc.*, 94-cv-3295, 1994 U.S. Dist. LEXIS 2207 (N.D. Ill. June 23, 1994) ................................................................................................. 8

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012). ............................ 18

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011) ....................... 9, 13, 15, 20, 22, 24

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) ........................ 11, 12

Statutes

Americans with Disabilities Act, 42 U.S.C. § 12181 ............................................................ 2, 8

Tex. Hum. Res. Code § 121.011 *et seq.* .................................................................................. 1, 8

Rules

Federal Rule of Civil Procedure 23 ...................................................................... *passim*

Treatises

7 C. Wright & A. Miller, Federal Practice & Procedure § 1762 (1972) ...................................... 11

Regulations

28 C.F.R. § 36.309 ..................................................................................................................... 8

28 C.F.R. § 36.303 ................................................................................................................. 3, 8

28 C.F.R. § 36.102 ..................................................................................................................... 8

## I.    INTRODUCTION

Plaintiffs Claire Stanley, Derek Manners, and Christopher Stewart (collectively, "Plaintiffs" or "Named Plaintiffs") are blind, recent law school graduates who took bar preparation courses offered by Defendant Barbri, Inc. ("Defendant" or "Barbri") and have encountered common accessibility barriers to the Barbri courses, including accessibility issues with Barbri's website, mobile application, and course materials.  These access barriers resulted in inferior bar preparation services, denied them full and equal enjoyment of Barbri's services, and violated the Americans with Disabilities Act, (the "ADA") and the Texas Human Resources Code (the "THRC").  42 U.S.C. §§ 12101, *et seq.*; Tex. Hum. Res. Code §§ 121.011 & 121.003.

The discrimination endured by the Plaintiffs has similarly impacted visually impaired law school graduates across the country.  To remedy these systemic violations, Named Plaintiffs seek certification of the following class:  All visually impaired students nationwide who, on or after April 25, 2014, took, plan to take, or attempted to take a Barbri bar review course at a time when Barbri's website, mobile application, or other course materials was or is not fully accessible to legally visually impaired students, or those who have been discouraged from taking the Barbri bar review course due to such inaccessibility.  Dkt. No. 15 (First Amended Complaint ("FAC")) at ¶ 65 ("Putative Class").

This case is well-suited for class treatment.  The Putative Class is sufficiently numerous; it includes, at a minimum, dozens of visually impaired law students and law school graduates located across the country.  Putative Class members' claims depend on common questions of law and fact, which predominate over individual questions.  The similar legal claims held by the members of the Putative Class, and the Texas choice-of-law and Texas choice-of-forum clauses in Barbri's contracts with the Plaintiffs, make a class action in this forum superior to holding multiple trials. Moreover, based on their previous experience with Barbri and their plans to retake the course in

the foreseeable future, the Named Plaintiffs have the knowledge and understanding necessary to control the litigation, and no conflicts exist between the Named Plaintiffs and members of the Putative Class.  Finally, Plaintiffs' counsel brings the zeal and experience necessary to represent the class.  For these reasons, and as described more fully herein, this Court should grant the Plaintiffs' motion.

## II.   STATEMENT OF FACTS

Barbri touts itself as the most trusted bar review course and is "the only course available to students in all fifty states…"  FAC at ¶ 36.  The "overwhelming majority" of law school students take Barbri to prepare for the bar examination each year.[1]  More than 1.3 million students have passed the bar examination using Barbri, more than all other courses combined.[2]

Complaints by the three Named Plaintiffs and many additional visually impaired Barbri students are strikingly similar and demonstrate Barbri's refusal to make its course accessible, as discussed in further detail below.  Visually impaired students are disadvantaged at every stage of Barbri's four-step bar review framework:  1) preparation for lectures; 2) attendance at workshops and lectures; 3) review of lecture notes; and 4) completion of practice questions.[3]

The first step is for students to review materials in preparation for class.[4]  Students were directed to the Personal Study Plan ("PSP"), an online study schedule that lists assignments.[5]  However, visually impaired students could not access the PSP with screen readers, as many complaints to Barbri detailed.[6]  Even when Barbri was aware of methods to circumvent the

---

[1] Bar Review, BARBRI, www.barbri.com/bar-review-course/ (last visited Feb. 10, 2017).

[2] BARBRI, www.barbri.com (last visited Feb. 10, 2017).

[3] Def.'s Interrog. Resp. 4 (App. at 1265-74).

[4] Id.

[5] Id.

[6] App. at 1672-1689, 1692-1693, 1699-1700, 1702, 1705, 1708, 1710-11, 1716, 1719, 1723, 1726-27, 1740, 1758,1922-23, 1936, 1938, 2024, 2027, 2066-67.  *See also* (Title III of the ADA requires provision of auxiliary aids or services, including screen reader software and accessible electronic and information technology, or other effective

accessibility barriers of the PSP, Barbri did not distribute this information to all visually impaired students.[7]

In addition to the course schedule, visually impaired students could not access their books in a format compatible with their screen readers in order to prepare for class or did not receive electronic course books in a timely manner.[8]  Without access to the study books, visually impaired students started the course at a disadvantage.  As Named Plaintiff Chris Stewart explained to Barbri,

> I must confess I am a little disturbed by the lack of information present in the OneDrive folder. It appears that, on my end… a lot of things are still missing. This is particularly disturbing given that the bar exam is six weeks away. I certainly appreciate the work you guys do, but I'm sure you can understand how stressful it is to be looking ahead and having no materials for the upcoming subjects.[9]

The second step in the Barbri framework is for students to attend lectures and essay writing workshops.[10]  Unlike sighted students, visually impaired students could not control (i.e. fast forward, rewind, or pause) the lecture videos on the Barbri website using their screen reader.[11]  T.T.,[12] a Barbri student, wrote:

> I want to reiterate that the online media player for lectures is completely inaccessible to screen reader users. I have not been notified of a fix to this problem….  As students paying the substantial tuition for BARBRI… blind students deserve full and equal access to BARBRI resources. This includes a fully accessible webpage with media controls that we can use. Currently, I am unable to use any of the media controls when I access BARBRI content with my computer.[13]

---

methods of making visually delivered materials available to individuals who are blind or have low vision, unless providing auxiliary aids would result in an undue burden).

[7] App. at 1676-79.

[8] App. at 24-349.

[9] App. at 682.

[10] Def.'s Interrog. Resp. 4 (App. at 1265-74).

[11] App. at 1206, 1357, 1363-1534, 1400-66, 1539, 1549-53, 1866-71, 1886-93, 2020-2022, 2026, 2054-59.

[12] Barbri's production of documents to Plaintiffs redacted the full names of Barbri students, instead referring to them by their initials absent authorization to share their names.

[13] App. at 1364.

Visually impaired students were unable to participate fully in lectures because they did not receive the requisite lecture materials.  Lectures were accompanied by fill-in-the-blank handouts, which permitted sighted students to emphasize portions of the lectures that Barbri considered important. Visually impaired students were typically given filled-in lecture handouts as an accommodation so they could follow along with the lecture.[14]  However, these handouts were consistently delivered late, incomplete, or in a format that was not useful.[15]  Barbri student S.H. summarized these challenges:

> I have the most updated version of the [sic] handout you have sent us, and it is not filled in in many places. This means, during lecture, I have to both follow along with the lecturer by listening to him, and simultaneously listen to my notes for places where the handout is not filled in, and then frantically fill in the missing parts while trying to keep listening to what the professor is saying. This is extremely difficult because the lectures are very fast, which I would imagine is the reason for the accommodation of filled-in handouts in the first place. . . .  If you will not be able to get us these, I will probably have to stop going to class and watch the lectures online so that I can pause the lecture and fill in the handouts you send us. I would strongly prefer not to do this because it is unnecessarily time-consuming.[16]

S.H. also explained the significance of not receiving the completed, accessible handouts in a timely fashion:

> [It] has been a pretty big study distraction and source of stress over the last week, and I would love it if I could be assured by them that we could just get 100% filled in, 100% accessible handouts before the lectures. The source of stress is both the missing handouts themselves and the fact that there seems to be no system in place for ensuring we receive appropriate handouts on time.[17]

At least 20 other visually impaired students complained that they did not receive accurate, completed lecture handouts on time.[18]

---

[14] DeSimone Dep. 140:9-21, Feb. 2, 2017 (App. at 2069-2267) (the transcript of DeSimone's deposition is rough copy; the final version of which will be supplanted).

[15] App. at 386-1172, 1341-42, 1565-70, 1575, 1864-71, 2026.

[16] App. at 755-57.

[17] App. at 763-65.

[18] App. at 1-349, 655-1169, 1852-53.

The third step in the Barbri framework, review of lecture notes, was similarly inaccessible to visually impaired students who did not receive or could not utilize the handouts, as discussed above.[19]

The final step of the Barbri framework is to complete practice questions using online diagnostics and multiple choice questions in a course book.[20]  Barbri advertises the importance of its online features and course materials to successful bar preparation, in part due to the real-time feedback of these features and materials.  For example, "[t]he online Essay Architect tool provide[d] immediate feedback for higher scoring essays.  It enhance[d] your ability to write the lawyer-like answers that the bar examiners are looking for on the bar exam."  FAC at ¶ 37.  Visually impaired students complained that Essay Architect was inaccessible.[21]  When considering enhancements to improve Essay Architect, Former National ADA Director Kate Levine recognized the unlawful inaccessibility of the program:  "If you mean that Essay Architect/the assessments would be only 30% or 50% functional for an ADA student, I don't believe this would meet our obligation under the ADA."[22]

Similarly, diagnostic tool Barbri Amp "quickly assesse[d] your level of knowledge and confidence in core areas of law, then focus[ed] your attention where you need additional study.  Barbri Amp monitor[ed] your aptitude in real time and instantly configure[d] follow-up questions until you[] demonstrate[d] a solid grasp of a concept."  FAC at ¶ 40.  However, Barbri Amp was not accessible to screen readers, a fact which several members of the Putative Class made Barbri aware of during the Class Period.[23]  Barbri obtained instructions to improve the

---

[19] Def.'s Interrog. Resp. 4 (App. at 1265-74).
[20] Id. (App. at 1265-74).
[21] App. at 1228-32, 1241, 1248-51, 1253, 1343-57, 1975.
[22] App. at 1234-40.
[23] App. at 347-48-, 1171-72, 1184-1210, 1212, 1220-26, 1870-71, 1536-38, 2020-21.

accessibility of this feature, but only shared this information with two visually impaired students.[24]  Finally, Study Smart, an online practice tool for multistate bar examination questions, is similarly inaccessible and was the subject of several complaints by members of the Putative Class.[25]  To date, Barbri has not provided any alternatives to Barbri Amp or Study Smart that provide the instant, targeted feedback that is available to sighted students.[26]

Barbri concedes that it has obligations under the ADA to make its course accessible.  The Barbri website states, "Barbri complies with the Americans with Disabilities Act (ADA) and provides appropriate auxiliary aids and services to students with disabilities to ensure effective communication."  FAC at ¶ 42.  Barbri's ADA Manual acknowledges the breadth of its responsibilities under the ADA:

> Most accommodations, even if expensive, are not an undue burden when considered in light of BARBRI's total business revenues.  Also, about the only time that a request would fundamentally alter the nature of the course is if a student wants private instruction, because BARBRI programs are designed for group instruction.[27]

Despite the policies it espoused publicly, Barbri's institutional approach to ADA compliance assured, and continues to assure, that visually impaired students received, and continue to receive, bar preparation services that were, and are, inferior to their sighted counterparts.  FAC at ¶ 42.  Barbri's ADA team lacks the training, experience, and resources to adequately provide accommodations.  Most notably, Christina DeSimone, Barbri's current National ADA Director, had no ADA experience before she took the position, and has received no formal training through school, seminars, or conferences on the requirements of the ADA.[28]

---

[24] App. at 1171-72, 1206, 1211, 1214-15.

[25] App. at 1310-40, 1931-37, 1967, 1973-79, 2000-02.

[26] DeSimone Dep. 81:22-82:8; 83:24-84:4; 177:16-179:22 (App. at 2069-2267).

[27] App. at 351-79.

[28] DeSimone Dep. 4:8-12; 5:24-6:4; 16:5-10 (App. at 2069-2267).

In fact, Barbri does not train any employees on the requirements of the ADA.[29]  Further, Ms. DeSimone held the only position at Barbri dedicated exclusively to the provision of accommodations to visually impaired students.[30]  Thus, it is no surprise visually impaired students consistently complained about receiving their course materials late, as Ms. DeSimone was the only person at Barbri that formatted electronic materials.[31]  Similarly, Barbri only employed one Braille transcriptionist.[32]

Barbri's lackadaisical approach to the provision of accommodations was captured in an internal email chain discussing a complaint received from a visually impaired student about accessibility problems with the website and mobile application.  Peter Frey, Chief Technology Officer of Barbri, asked the Technology team:  "Can you read through the student's issues and see if there is any low hanging fruit here…."[33]  Later in the email chain, Peter Bruce, Operations Analyst, responded, "If there is something that is a complete road block and preventing the student from getting a material, we will figure out a workaround to get them the information they need."[34]  Rather than address accessibility issues effectively, proactively and systemically, Barbri waited until visually impaired students were in the midst of taking the courses, by which time, as demonstrated above, these students had already been disadvantaged as compared to their sighted peers.  Even then, Barbri failed to address the widespread and pervasive accessibility barriers faced by visually impaired students of its course, effectively placing almost insurmountable barriers to success for a class of persons seeking to enter the practice of law.  To remedy these

---

[29] Id. at 19:10-12 (App. at 2069-2267).
[30] Id. at 10:9-11:2 (App. at 2069-2267).
[31] Id. at 71:23-72:2; 128:2-129:9 (App. at 2069-2267).
[32] Id. at 185:4-8 (App. at 2069-2267).
[33] App. at 1351-57.
[34] Id.

violations, Plaintiffs filed this civil action, seeking declaratory and injunctive relief under the ADA and the THRC, and damages under the THRC for the harm they have suffered.

## III.    REQUIREMENTS OF THE ADA AND THE THRC

Title III of the ADA and Chapter 121 of the THRC prohibit places of public accommodation, providers of courses, and other entities from discriminating on the basis of disability.  28 C.F.R. § 36.102(a); 42 U.S.C. § 12181(7)(j) & (d); Tex. Hum. Res. Code §§ 121.011(a), 121.003(d).  As a place of public accommodation and a provider of a course for licensing, Barbri must make reasonable accommodations and provide auxiliary aids and services to students with disabilities unless doing so would cause an undue burden or fundamentally alter the bar review course.[35]  28 C.F.R. § 36.303(a); 28 C.F.R. § 309(c)(1); Tex. Hum. Res. Code § 121.003; Tex. Hum. Res. Code § 121.011.  A more detailed explanation of the applicability of the ADA and the THRC to Barbri is described in Plaintiff's Opposition to Motion to Dismiss, we will not repeat that discussion here.  *See* Dkt. No. 28 ("Pls.'s Opposition to Def.'s Mot. to Dismiss") at 14-25.  Since the briefing, Plaintiffs' counsel has learned that Barbri, contrary to the representations it made in its Motion to Dismiss, has acknowledged that its course offerings are required to be accessible to students with disabilities.[36]  This acknowledgment was also made during the deposition of Ms. DeSimone, Barbri's National ADA Director.[37]

## IV.    ARGUMENT

---

[35] "Auxiliary aids and services" include screen reader software and accessible electronic and information technology, or other effective methods of making visually delivered materials available to individuals who are blind or have low vision.  28 C.F.R. § 36.303(b)(2).

[36] *See* ADA Manual, BARBRI (2016) (stating "Title III of the ADA (including its amendments) requires that BARBRI, as a course that provides instruction for licensing, must provide reasonable accommodation to qualified students with disabilities); Barbri ADA Pamphlet, BARBRI (asserting "BARBI is considered a public accommodation under Title III of the ADA…."); Proposed Lecture Guide, BARBRI . (asserting "BARBI is considered a public accommodation under Title III of the ADA…").  *See also U.S. v. Harcourt Brace Legal Prof'l. Publ., Inc.*, 94-cv-3295, 1994 U.S. Dist. LEXIS 2207 (N.D. Ill. June 23, 1994).

[37] DeSimone Dep. 28:5-10, 35:5-7 (App. at 2069-2267).

### A. **Legal Standards for Class Certification**

A district court should certify a class if the proposed class satisfies the requirements of Rule 23(a) and the requirements of at least one of the types of classes in Rule 23(b).  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 623 (5th Cir. 1999).  Here, the Putative Class meets all the requirements of Rule 23(a), as well as the requirements of Rule 23(b)(2) and (b)(3).

Under Rule 23(a), a court may certify a class where (1) its members are so numerous that joinder of all claims is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of the class claims; and (4) the representative parties and their counsel will fairly and adequately protect the interests of the class.  FED. R. CIV. P. 23(a).  Certification pursuant to Rule 23(b)(2) is appropriate when a Defendant "act[s] or refuse[s] to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class."  FED. R. CIV. P. 23(b)(2).  Class certification is also appropriate under Rule 23(b)(3) when "questions of law or fact common to class members predominate over any questions affecting only individual members, and [when] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  Additionally, "the class sought to be represented must be adequately defined and clearly ascertainable."  *In re Deepwater Horizon (Deepwater Horizon II)*, 739 F.3d 790, 821 (5th Cir. 2014).

As explained more fully below, the Putative Class readily meets all these requirements. The Supreme Court has recognized "civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of class actions.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997).  "As an initial matter, it is important to remember that Rule 23(a) must

be read liberally in the context of civil rights suits.  This is especially true when the class action falls under Rule 23(b)(2)."  *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975).

Courts frequently find the requirements of Rule 23 are met by classes of persons with disabilities asserting claims under disability rights statutes.  *See, e.g.*, *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205 (10th Cir. 2014) (affirming certification of a class of persons alleging denial of equal access to defendants' stores); *Lucas v. Kmart Corp.*, No. 99-cv-01923-JLK, 2005 WL 1648182, at *3 (D. Colo. July 13, 2015) (certifying nationwide class of people who use wheelchairs challenging barriers and policies at 1,500 retail stores).[38] Plaintiffs analyze the requirements of Rule 23(a) and Rule 23(b)(2) and (b)(3) separately below.

### B.   The Class Satisfies the Requirements of Rule 23(a).

#### 1.   The Class Meets the Numerosity Requirement of Rule 23(a)(1).

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable.  FED. R. CIV. P. 23(a)(1).  The Fifth Circuit, in *Jones v. Diamond*, explained, "the general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1)."  519 F.2d at 1100.  In *Zeidman v. J. Ray McDermott & Co.*, the Fifth Circuit noted plaintiffs must only provide a "reasonable estimate of the number of purported class members," not an exact number.  651 F.2d 1030, 1038 (5th Cir. 1981).  The actual number of class members is not the determinative question for numerosity; classes of 25 or 30 people have been certified.  *Id.*  The *Zeidman* court listed multiple factors that

---

[38] *See also Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 613-14 (N.D. Cal. 2004) (certifying statewide class of people who use wheelchairs challenging barriers and policies at approximately 220 restaurants); *Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 120-23 (C.D. Cal. 2008) (certifying class of persons with mobility disabilities suing for alleged violations of architectural accessibility requirements at a grocery store chain); *Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1199-1203 (N.D. Cal. 2007) (certifying class of persons with visual impairments suing for alleged violations of accessibility requirements at online store); *Access Now, Inc. v. Ambulatory Surgery Ctr. Grp., Ltd.* 197 F.R.D. 522, 526 (S.D. Fla. 2000) (certifying class consisting of all disabled persons as defined by ADA in action against medical care facilities).

may be relevant to determine "whether joinder of all members is practicable in view of the numerosity of the class":  the geographical dispersion of the class; the ease of identifying members of the class; the nature of the action; and the size of each plaintiff's claim.  *Id.* (citing *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980); 7 C. Wright & A. Miller, Federal Practice & Procedure § 1762, at 600-03 (1972)).  All factors need not be present to demonstrate numerosity.  *Zeidman*, 651 F.2d at 1038.

### a.   Number of Class Members

Here, based on the information currently available, a minimum of 35 people have already been specifically identified that fall within the Putative Class.  Barbri identified 29 visually impaired students who inquired about or took its bar review course since April 25, 2014.[39]  Visually impaired students will likely continue to take Barbri's bar review course based on recent trends of course participation.  At least five to 12 visually impaired law students sought accommodations for each Barbri bar review course from Summer 2014 to Summer 2016.[40]  In addition, Barbri has expressed that it expects these numbers to increase significantly.  Former National ADA Director Levine estimated that 100 visually impaired students would enroll in the Summer 2015 course and 25 in the winter 2016 course.[41]  In addition, Plaintiffs' counsel has received information from at least five visually impaired students who are currently in law school and are considering, or have already committed, to taking the Barbri bar review course.[42]  In any event, the estimated number of Putative Class members at least matches the numbers allowed for in *Zeidman*. 651 F. 2d at 1038.

### b.   Geographic Dispersion of the Class

---

[39] Def.'s Interrog. Resp. 1 (App. at 1265-74).
[40] Def.'s Interrog. Resp. 6 (App. at 1265-74).
[41] App. at 1343-50.
[42] Decl. of D. Goraya (App. at 2299-2300).

The Putative Class is geographically diverse.  The three Named Plaintiffs reside in different states, and the visually impaired students identified by Barbri are likely dispersed around the country, considering they took at least 15 state bar examinations from the date this case was filed, April 25, 2014, to the present.[43]

### c.   Ease of Class Member Identification

Identification of Putative Class members is difficult because the class includes visually impaired law students or attorneys who have learned of accessibility barriers to Barbri's bar review course, including current law students who have never taken the bar examination and attorneys who need to take another bar examination for personal or professional reasons.

### d.   Nature of the Case

Plaintiffs seek injunctive and declaratory relief, including changes to Barbri's website, mobile application, and system for the provision of course materials that will make Barbri's bar preparation course accessible to visually impaired students and provide them with the full and equal enjoyment of Barbri's course that the ADA and the THRC require.  The need for this relief is best illustrated through review of the similarity and consistency of all accessibility complaints from visually impaired students throughout the relevant period.  *Mullen*, 186 F.3d at 624, n.1 (Finding class certification was proper in part "[b]ecause class was similarly linked by a common complaint.").

### 2.   The Class Meets the Commonality Requirement of Rule 23(a)(2).

To satisfy the commonality requirement of Rule 23(a)(2), Plaintiffs must only show that there are some questions of law and fact common to the class.  FED. R. CIV. P. 23(a)(2).  In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court stated commonality requires the plaintiff to

---

[43] App. at 2302-10.

demonstrate that class members "have suffered the same injury," not merely a violation of the same provision of law.  564 U.S. at 349-50 (2011).  The claims of every proposed class member must depend on a common contention that is capable of class-wide resolution.  *Id.*  The Fifth Circuit, in *Deepwater Horizon II*, explained that the "same injury" requirement could "be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse."  739 F.3d at 810-11.  A finding of commonality is appropriate in the Fifth Circuit when class members assert identical theories of liability.  *Mullen*, 186 F.3d at 625.

Barbri engaged in a "common policy and/or practice of denying [visually impaired students] full and equal access to the goods and services of Barbri's bar review course, since parts of its website, mobile application, and course materials are inaccessible" to visually impaired students.  FAC at ¶ 67.  All Named Plaintiffs and other identified Putative Class members repeatedly requested accessible course materials from Barbri.  The lectures, course books, and handouts they received were consistently late, inaccurate, and in an inaccessible format.[44]  The Named Plaintiffs were forced to follow-up repeatedly to obtain missing materials throughout the duration of the course, preventing them from learning at the pace best for them and putting them at a disadvantage as compared to their sighted peers.

The Named Plaintiffs and other Putative Class members could not fully utilize the Barbri website.  They could not utilize the schedule posted in the PSP or control lecture videos.[45]  The diagnostic tools used to assess progress, such as Study Smart or Essay Architect, were inaccessible to visually impaired students.[46]

---

[44] App. at 1-349, 655-1169, 1852-53.
[45] App. at 1209-10, 1924-30, 1944, 2004-08, 2023-24, 2034-41, 2060-63.
[46] App. at 1275-1309, 1552-53, 1573, 1563-1663, 1858, 1927-30, 1947, 1973-79, 1982-84, 2000-02.

A determination of whether Barbri failed to meet its obligations under the ADA and the THRC depends on the answers to questions common to all class members.  The court must determine factual questions, including whether the features on Barbri's website and mobile application were accessible to visually impaired students using screen readers; and whether course materials were delayed, incomplete, and inaccurate during the class period.  The court will also decide questions of law common to the putative class, such as whether Barbri's obligation to provide reasonable accommodations under the ADA and the THRC required it to make the features on its website and mobile application accessible to visually impaired students using screen readers or to offer alternatives with the same type of immediate response; whether alternative features, course materials, and diagnostic tools offered by Barbri were sufficient accommodations under the ADA and the THRC.  For these reasons, common questions of law and fact exist, and the Putative Class satisfies Rule 23(a)(2).

### 3.   The Class Meets the Typicality Requirement of Rule 23(a)(3).

The Supreme Court has held, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."  *Wal-Mart*, 564 U.S. at 349 n.5 (citation omitted).  The typicality requirement focuses on the "similarity of the legal and remedial theories behind [Plaintiffs'] claims."  *Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986); *see also Scott v. Fin. Servs.*, 277 F.R.D. 316, 325 (N.D. Tex. 2011) (quoting *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) ("If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.").

When plaintiffs claim liability results from a pattern or practice of discrimination, they must "establish by a preponderance of the evidence that… discrimination was the company's standard operating procedure[] rather than the unusual practice."  *Int'l Brotherhood of Teamsters*

*v. United States (Teamsters)*, 431 U.S. 324, 336 (1977); *see also Scott*, 277 F.R.D. at 325

(holding the named plaintiff satisfied the typicality requirement when plaintiff "alleged a

continuous course of conduct by defendant[] and that they, as well as each member of the class,

suffered" an injury.) (internal citation omitted).  Once this burden is satisfied, that showing will

support a rebuttable inference that all class members were victims of the discriminatory practice,

and will justify injunctive relief against the continuation of the discriminatory practice.

*Teamster*s, 431 U.S. at 361.

 This Court has specified that in assessing typicality, "the critical inquiry is whether the

class representative's claims have the same essential characteristics as those of the putative

class." *Scott*, 277 F.R.D. at 325 (quoting *James*, 254 F.3d at 571).  Named Plaintiffs have

satisfied this standard.  The inaccessibility experienced by each of the Named Plaintiffs is typical

of those experienced by Putative Class members generally, and it is based on the same Barbri

course of conduct that gives rise to the claims of other Putative Class members.  Plaintiffs allege

in their First Amended Complaint that Barbri had an obligation under the ADA and the THRC to

make its bar review course accessible for the full and equal enjoyment of visually impaired

students.  FAC at ¶¶ 91, 108.  Instead, as discussed in the Sections II and IV(A)(i)(2) above,

Barbri created and maintained inaccessible features on its website and/or mobile application even

though it was aware that these key study tools could not be utilized by visually impaired

students.[47]  These features are critical parts of the bar review course and are incorporated into

Barbri's four-step framework; they are not ancillary additives.  Additionally, Barbri continued

ineffective practices surrounding the provision of electronic course materials, an accommodation

---

[47] App. at 1275-09, 1341-57.

granted to all visually impaired students, in spite of numerous complaints about these practices.[48]

Because Barbri's website, mobile application, and course materials were provided in an

inaccessible manner, all visually impaired students were affected by their diminished ability to

access the bar review course.   As a result, Plaintiffs seek injunctive relief that would benefit all

visually impaired students.   Accordingly, the claims of the Plaintiffs are typical of the class and

the requirements of Rule 23(a)(3) have been met.

### 4.   The Class Meets the Adequacy Requirements of Rule 23(a)(4).

#### a.   The Plaintiffs Will Adequately Represent the Class.

As class representatives under Rule 23(a)(4), Plaintiffs Claire Stanley, Derek Manners,

and Chris Stewart "must be part of the class and possess the same interest and suffer the same

injury as the class members." *Amchem Prods*, 521 U.S. at 625-26.   Additionally, the Named

Plaintiffs would only be inadequate representatives if their interests conflicted with the class

members' interests.   *Mullen*, 186 F.3d at 625-26.   Named Plaintiffs must also possess a sufficient

level of knowledge and understanding to control the litigation and protect the interests of absent

class members.   *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

The Named Plaintiffs have taken Barbri's bar preparation courses and plan to take them

again in the foreseeable future.[49]   Because these courses are inaccessible to visually impaired

students, the Named Plaintiffs and Putative Class members have suffered and/or will suffer the

same injuries, and they therefore seek the same relief.   The Plaintiffs share the same interest in

remedying the accessibility barriers to Barbri's website, mobile application, and course

materials, are willing to actively participate in the litigation to protect the interests of absent class

---

[48] App. at 1341-42, 411-413, 773-75, 810, 6-15.
[49] Decl. of C. Stanley (App. at 2316-17); Decl. of D. Manners (App. at 2319-20); Decl. of C. Stewart (App. at 2322-23).

members, and have a strong interest in securing injunctive, declaratory, and monetary relief to remedy Barbri's discriminatory conduct.  The Plaintiffs have no interests in conflict with those of other Putative Class members and are adequate representatives of the class.

### b. Plaintiffs' Counsel Will Adequately Represent the Class.

In the selection of class counsel, Rule 23(g)(1)(A) lists four mandatory factors that the court must consider:  (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Here, Plaintiffs' counsel have demonstrated the zeal and confidence necessary to pursue this action vigorously.  Plaintiffs' counsel have conducted a significant investigation into the potential claims in this action, including interviewing members of the Putative Class across the country, and comprehensively analyzing the inaccessibility of Barbri's bar preparation course.

Plaintiffs' counsel are also sufficiently qualified, resourced and experienced to conduct the class litigation.  Plaintiffs are represented by the Washington Lawyers' Committee for Civil Rights.  The Washington Lawyers' Committee for Civil Rights has expended more than 400 hours investigating and prosecuting this action and is sufficiently financially resourced to actively and zealously ensure that the interests of the class are well represented.[50]  Plaintiffs' counsel have extensive experience in litigating class actions and disability civil rights actions, and were previously found adequate to represent classes of Plaintiffs, constituting persuasive evidence that they will serve as adequate counsel in this case.  *See Scott v. Clarke*, 61 F. Supp. 3d

---

[50] Additionally, Plaintiffs' Counsel is not accepting attorneys' fees in this matter unless and until there is either a resolution to the case that results in a monetary recovery or an order from the Court that would entitle Plaintiffs' Counsel to petition the court for a fee award to be paid by Defendant.  Under no circumstances are Plaintiffs' attorneys' fees or costs to be borne out of pocket by Plaintiffs or the Putative Class.

569, 590 (W.D. Va. 2014) (recognizing the Washington Lawyers' Committee for Civil Rights

and Urban Affairs as a "well-known public interest legal services organization[] with substantial

experience with respect to and involvement in civil rights litigation, including class actions");

*Thomas v. Christopher*, 169 F.R.D. 224, 238 (D.D.C. 1996) (noting the extensive class action

experience of the Washington Lawyers' Committee for Civil Rights and Urban Affairs).[51]  Thus,

the requirements of Rule 23(a)(4) have been met.

### 5.  The Class is Ascertainable.

The Fifth Circuit has also required a class to be "adequately defined and clearly

ascertainable." *Deepwater Horizon II*, 739 F.3d at 821 (quoting *Union Asset Mgmt. Holding*

*A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012).  This court has held that "ascertainability

requires only that the court be able to identify class members at some stage of the proceeding"

and does not require "the identity of each class member before certification." *Seeligson v. Devon*

*Energy Prod. Co.*, No. 3:16-CV-00082-K, 2017 U.S. Dist. LEXIS 2458, at *13-14 (N.D. Tex.

Jan. 6, 2017); *see also Frey v. First Nat'l Bank Sw.*, 602 Fed. Appx. 164, 168 (5th Cir. 2015).  In

*Seeligson*, this Court acknowledged that identification of class members before certification

could present some "administrative challenges" and granted certification of the proposed class

because the class was ascertainable "either through . . . records, or by affidavit." *Seeligson*, 2017

U.S. Dist. LEXIS 2458, at *13-14.

The Putative Class meets this standard.  Members of the Putative Class can easily verify

that they have a disability covered by the ADA and THRC.  The National ADA Director at

Barbri obtains documentation of a disability from visually impaired students' law school or

medical provider before issuing a grant of accommodations.[52]  Students considering Barbri for

---

[51] App. at 2312-14.
[52] App. at 351-79.

future bar preparation courses could submit the same documentation accepted by Barbri as evidence of their visual impairment.  Members of the Putative Class can document their interest or participation in the course.  Barbri possesses, and Plaintiffs' counsel has requested production of all enrollment forms of visually impaired students during the relevant period.[53]  Visually impaired students or attorneys who plan to take an upcoming bar review course or who have decided not to do so due to accessibility concerns may submit affidavits to reflect their inclusion in the Putative Class.[54]  Accordingly, the class is sufficiently ascertainable.

### C.   The Class Satisfies the Requirements of Rule 23(b)

To certify a class, a plaintiff must also satisfy at least one of the three types of classes described in Rule 23(b).  Here, the Putative Class satisfies at least two of the three types of Rule 23(b) classes as described below.

#### 1.   The Injunctive Relief Sought by the Class Satisfies Rule 23(b)(2).

Certification under Rule 23(b)(2) is appropriate where (1) the defendant's action or refusal to act [is] generally applicable to the class; and (2) plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class."[55]  FED. R. CIV. P. 23(b)(2).  Both elements are present here.  The key to certification of a Rule 23(b)(2) class is

> the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can only be enjoined or declared unlawful as to all of the class members or none of them…. Rule 23(b)(2) only applies when a single injunction or declaratory judgment would provide relief to each member of the class.

---

[53] Pl.'s Req. for Produc. at 2 (App. at 2289-95).

[54] Additionally, notice to the class should be inexpensive and straight-forward.  Actual notice to those class members who took Barbri's course can be made via e-mail based on the records maintained by Barbri, which were previously used to provide notice to the putative class in this Court's Dec. 27, 2016 Order.  Dkt no. 38.  Additional notice can be made via publication notice to listserves whose memberships consist of blind and visually impaired lawyers, such as BlindLaw (www.blindlawyer.org) and other appropriately targeted forums.  In total, the cost of notice, which Plaintiffs believe should be borne by Barbri, should not be costly.

[55] Alternatively, monetary relief may be certified under Rule 23(c)(4).

*Wal-Mart*, 564 U.S. at 360 (internal citations omitted); *see also Morrow v. Washington*, 277 F.R.D. 172, 196 (E.D. Tex. 2011). Under Rule 23(b)(2), all claims must depend on a common contention of a nature that is capable of class wide resolution because "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 389-90.

The Fifth Circuit has interpreted Rule 23(b)(2) to merely require that class members (1) have been harmed in essentially the same way and (2) seek specific injunctive relief. *M.D. v. Perry*, 675 F.3d 832, 845 (5th Cir. 2012). Rule 23(b)(2) does not require that all members of the class be aggrieved by the defendant's conduct, only that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class. *Jones*, 519 F.2d at 1099-1100; *see also Morrow*, 277 F.R.D. at 197 (holding "class action is appropriate" under 23(b)(2) "since the liability which the plaintiffs [sought] to establish [was] based on the [defendant's] operation itself rather than on the circumstances surrounding each individual" plaintiff.) In fact, "civil rights cases against parties charged with unlawful, class-based discrimination," like this case, are "prime examples" of classes under Rule 23(b)(2). *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997); *see also Morrow*, 277 F.R.D. at 197 ("Rule 23(b)(2) certification is especially appropriate where a plaintiff seeks injunctive relief against discriminatory practices by a defendant.") (internal citations omitted).

Here, as alleged in the First Amended Complained and described herein, Barbri acted and refused to act in ways that have maintained the inaccessibility of its bar preparation course and discriminated against visually impaired students. In short, Barbri consistently provided late, inaccessible, and/or inaccurate course materials to visually impaired students. *See infra* Sec. II.

The declaratory and injunctive relief sought will benefit all visually impaired Barbri students.  Plaintiffs seek a declaratory judgment that they have a right to access Barbri's services and that Barbri's lack of accessibility violates the ADA and THRC.  The court's determination of whether visually impaired students have a right to access course materials will apply to all class members or to none of them.  Similarly, the injunctive relief sought is class-wide in nature, and would provide relief to each class member.  Specifically, the Plaintiffs seek orders that Barbri must (1) provide auxiliary aids to visually impaired students in a timely, complete, and accurate fashion; (2) modify or develop features on Barbri's website and mobile application to be compatible with screen-reading software used by visually impaired students; and (3) modify, develop, and follow programs, policies, procedures, and training for accommodating visually impaired students.  This remedy would provide relief to the entire class.

Similarly, although there is a damages component associated with Plaintiffs' THRC claim, the THRC provides for a "conclusive presumption of damages in the amount of at least $300 to the person with a disability."  THRC Section 121.004(b).  Accordingly, claims for damages of $300 per class member can readily be certified under Rule 23(b)(2) as such claims are "incidental to the injunctive or declaratory relief."  *Wal-Mart*, 564 U.S. at 360.  The claims for damages suffered by Plaintiffs and the class members in excess of the statutory minimum can be certified under Rule 23(b)(3) as further described below.

## 2.  **The Class Satisfies Rule 23(b)(3).**

Damages claims under Rule 23(b)(3) may be certified alone or as part of a hybrid with Rule 23(b)(2).  *Tyson foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2015).  Certification under Rule 23(b)(3) is appropriate where the court finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a

class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, Plaintiffs only seek damages under the THRC and easily satisfy the two legal standards for certifying a Rule 23(b)(3) class, predominance and superiority, for purposes of monetary damages.

a. <strong>Common Questions Predominate over Individual Questions.</strong>

The Supreme Court, in *Tyson Foods, Inc.* v. *Bouaphakeo*, described the predominance standard:

> The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation…. The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

136 S. Ct. at 1045 (internal quotations and citations omitted); *see also Billitteri v. Sec. Am., Inc.*, No. 3:11-cv-00191-F, 2011 U.S. Dist. LEXIS 92713, at *32-33 (N.D. Tex. Aug. 4, 2011) ("In order to predominate, common questions must constitute a significant part of the individual cases.") (internal quotations omitted). Individual questions are those "where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Bouaphakeo*, 136 S. Ct. at 1045. (internal quotations and citations omitted); *see also Klein v. O'Neal*, 222 F.R.D. 564, 568 (N.D. Tex. 2004).

Predominance is satisfied here because common questions predominate over individual issues. All Plaintiffs allege that Barbri failed to meet its obligation under the ADA and the

THRC to provide reasonable accommodations for visually impaired students to access its

website, mobile application, and course materials.  In each context, the court must determine

whether the ADA and the THRC required Barbri to provide access to visually impaired students

and, if so, whether Barbri failed to provide such access.  A single class-wide trial will decide

whether visually impaired students have a right under the ADA and the THRC to an accessible

bar review course, and whether visually impaired students were denied such accessibility.

Plaintiffs' entitlement to relief will flow directly from the Court's liability determination.  The

class meets Rule 23(b)(3)'s requirement that the claims of individuals in the class "prevail or fail

in unison." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. at 1191.

Second, as the Supreme Court reaffirmed in *Bouaphakeo*, the fact that class members

may have varying amounts of damages is not a reason to reject predominance. *See*

*Bouaphakeo*, 136 S. Ct. at 1045 (stating predominance may be satisfied even where "other

important matters will have to be tried separately, such as damages"); *see also Klein*, 222 F.R.D.

at 568 (holding "common questions predominate[d] over questions affecting individual class

members." Because "[w]hile there may be variations in the amounts of damages, each class

member was injured by a singular course of action by Defendants... and the elements of damages

for each individual plaintiff will involve proof of common questions.").  Here, the damages

suffered by the class members will be largely formulaic, consisting of, at a minimum, the $300

statutory damages provided for by the THRC. Tex. Hum. Res. Code § 121.004 Additional

damages would largely consist of the out-of-pocket expenses incurred by the class members to

partake of Barbri's inaccessible course.  To the extent that there may be unique claims for

damages, the Supreme Court has made clear that individualized issues can and should be

resolved in *Teamsters* hearings following a class-wide trial on common issues. *Wal-Mart*, 564 U.S. at 366-67 (citing *Teamsters*, 431 U.S. at 361).[56]

### b.   A Class Action Is Superior to Holding Multiple Trials.

Plaintiffs easily satisfy the superiority standard, holding a single class-wide trial is superior to holding multiple separate trials for each class member's identical claim. FED. R. CIV. P. 23(b)(3)(a)-(d).

First, Class members have little interest in maintaining separate actions. *See* FED. R. CIV. P. 23(b)(3)(a). Proving an ADA or THRC discrimination claim such as the one at issue here involves significant discovery and costly expert analysis. As a result, it is unlikely that members of the Putative Class and/or subclasses would seek to recover damages individually as opposed through a class action. *See Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Here, each Putative Class member is seeking damages that correspond with "pool claims which would be uneconomical to litigate individually." *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

Second, the extent and nature of litigation over Barbri's accessibility barriers supports a single class-wide trial. FED. R. CIV. P. 23(b)(3)(b). While several Putative Class members have contacted Plaintiffs' counsel about their potential claims, Named Plaintiffs are aware of no other individual actions filed.

Third, it is desirable to concentrate the litigation of claims challenging the accessibility of Barbri's bar preparation course in this forum. FED. R. CIV. P. 23(b)(3)(c). The choice-of-law-

---

[56] The *Teamsters* hearing approach is further supported by Rule 23(c)(4)'s provision that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."

and-jurisdiction provision for users of Barbri's website requires litigation of all disputes under Texas law in Dallas, Dallas County, Texas.[57]  The choice-of-law provision on the Barbri enrollment form also specifies the application of Texas law.[58] Adjudication of the rights of the class members and the responsibilities of Barbri in a single forum will allow for uniformity.

Fourth, there is no reason to believe that concentrating this action in this Court is undesirable or that there will be difficulties in managing a class action.  *See* FED. R. CIV. P. 23(b)(3)(d).  All the Putative Class members' claims depend on whether Barbri's refusal to remove accessibility barriers to its website, mobile application, and course materials violates the ADA and the THRC, and any peripheral individualized issues can be resolved through *Teamsters* hearings after the class-wide trial.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this court to grant its motion for class certification and for appointment of class representatives and class counsel.

Respectfully submitted,

Date:  February 10, 2017

 _/s/ *Matthew K. Handley*_____
Matthew K. Handley (admitted *pro hac vice*)
Leah M. Watson (admitted *pro hac vice*)
Deepinder K. Goraya (admitted *pro hac vice*)
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, NW, Suite 400
Washington, DC 20036
(202) 319-1000 (phone)
(202) 219-1010 (fax)
matthew_handley@washlaw.org

---

[57] Terms of Use, BARBRI (Aug. 24, 2015), www.barbri.com/terms-of-use/ (last visited Nov. 2, 2016).
[58] App. at 2325-26

deepa_goraya@washlaw.org

***Counsel for the Named Plaintiffs and Proposed
Class Counsel***

Hani Mirza
State Bar No. 24083512
TEXAS CIVIL RIGHTS PROJECT
501 Elm Street, Ste. #450
Dallas, Texas 75202
(972) 333-9200 (phone)
(512) 474-0726 (fax)

***Counsel for the Named Plaintiffs***

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the above and foregoing

**Plaintiff's Motion for Class Certification and Memorandum of Points and Authorities in**

**Support of Plaintiffs' Motion** was served February 10, 2017, via the CM/ECF filer for the

United States District Court for the Northern District of Texas, Dallas Division, upon all counsel

of record.

/s/ *Matthew K. Handley*
Matthew K. Handley

26